RUTH WIXON

*v.*

ROBERT WATSON *et al.*

*Opinion filed February 21, 1905.*

1. WILLS—*presumption against intestacy cannot overcome express language of will.* If a will actually fails to dispose of all of the testator's property, leaving a part thereof intestate, the presumption against intestacy does not authorize a court to place a construction upon the will not justified by the language used, for the purpose of making it dispose of all the property.

2. SAME—*a trust in personal property may be created without vesting absolute estate in beneficiary.* A trust in money derived from a sale of real estate may be so created that the beneficiaries will have only a right to the interest or income of the fund for life, leaving the fund itself intact for the remainder-men.

3. SAME—*when will passes only a life estate in personal property.* A will providing that upon the termination of a certain trust the trust estate shall be sold and the entire proceeds divided equally among named persons "for the term of their natural lives, and at the death of either of the above named persons I direct that such bequest reverts to my estate," passes only a life interest to the persons named, with remainder to the heirs-at-law, where it does not appear the bequests cannot be enjoyed without consuming the same.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

WHITFIELD & WHITFIELD, for plaintiff in error.

JOHN S. HUEY, for defendant in error Bertie Watson.

HORTON & BROWN, for certain defendants in error.

Mr. JUSTICE WILKIN delivered the opinion of the court:

On October 23, 1900, Caroline V. Storms died testate, leaving surviving her, her father, Robert Watson, her mother, Elizabeth Watson, her sisters, Ruth Wixon, Matilda Cox and Ella Gates Stonesifer, her brothers, William Watson and John Watson, her nephews, Harry Watson, Albert Wat-

son and William Watson, and her nieces, Bertie Watson
and Ella Watson, as her only heirs-at-law. In the first para-
graph of her last will and testament she provided for the
payment of her just debts and funeral expenses. By the sec-
ond paragraph she devised to her father and mother the use,
occupancy, rents, issues and profits of a plot of ground two
hundred feet square in the town of Hyde Park, together
with all buildings and improvements thereon, for the full
term of their natural lives or the life of the survivor of them,
with the direction to her executrix that in case any of the
buildings upon the premises should be damaged or destroyed
by fire, or otherwise, then her executrix was to repair or re-
build the same at the request, in writing, of her father and
mother, or without such written request if her executrix
should think it for the best interest of the estate; and her
executrix was to keep the place insured and to pay all taxes
assessed against it. By the third paragraph she directed her
executrix to pay to her father and mother, during the term
of their or either of their natural lives, the sum of $25 per
month. By the fourth paragraph she gave, devised and be-
queathed unto her sister Matilda Cox all her personal prop-
erty, of every kind and description, of which she died seized,
excepting certain furniture. The fifth paragraph, particu-
larly involved in the decision of the case, is as follows:

"*Fifth*—All the rest, residue and remainder of my estate
of which I shall die seized and possessed, I give, devise and
bequeath unto my executrix, hereinafter named, in trust,
however, for the following uses and purposes: My said ex-
ecutrix shall enter into possession of the said estate, manage
and control the same, keep the improvements thereon insured,
collect the rents, issues and profits thereon, pay the taxes
thereon, as in her discretion is for the best interests of my
estate, and shall continue so to do until the decease of my
said father and mother. As soon after my father and mother
shall have departed this life as, in the discretion of my
executrix, an advantageous sale may be made thereof, my

executrix shall sell and dispose of my said estate, and all thereof, in such parts and portions and for such price or prices and upon such terms and conditions as she shall think for the best interest of my said estate; and my said executrix shall equally divide the entire proceeds thereof among the following named persons, that is to say, my brother William Watson, my sister Mrs. Matilda Cox, my niece Bertie Watson, my two nephews, Albert Watson and William Watson, (children of my brother Charles H. Watson, since deceased,) for the terms of their natural lives, and at the death of either of the above named persons I direct that such bequest reverts to my estate."

By the sixth paragraph she gave her executrix full power and authority to sell and dispose of any and all of her estate after the death of her parents, etc. By the seventh paragraph she directed that the funds which at any time might be in the hands of her executrix should be invested by her in safe and reliable securities, either in government, county or city bonds, or loans secured by first mortgage, or deeds of trust on real estate.

After the instrument had been admitted to probate, the plaintiff in error, Ruth Wixon, one of the sisters of the testatrix, filed a bill in the circuit court of Cook county to contest and set the same aside. The allegations of the bill are, that the testatrix, at the time of executing the will, was of unsound mind and memory and was unduly influenced to make the same; also, that the will is, in fact, no valid last will and testament, for the reason that there is no final disposition therein of the real and personal property of deceased, inasmuch as by the terms thereof a certain trust estate is sought to be created for the evident purpose of and with specific directions to the trustee to convert the real estate therein described into money, to be divided among certain legatees therein named, to be by them used during their natural lives, and at their death, or the death of either of them, said money to revert to the testatrix's estate, which said estate so formed

anew by reversion is in no manner disposed of, and the same
is therefore intestate estate, descendible to the heirs-at-law
of the said Caroline V. Storms, deceased; also for the reason
that the surplus accruing to said estate from the rents, inter-
est and income from the real and personal estate and from the
sale of the contents of No. 441 Clark street is in no manner
disposed of, other than by the general direction to the trustee
to see that said funds shall, from time to time, be invested in
safe and reliable securities, with no final disposition thereof,
thereby rendering the same intestate estate; also for the rea-
son that said instrument creates, by its terms, a perpetual
trust in said estate, and was by all of its provisions and the
full plan thereof intended and designed to keep said estate
entire and for an unlawful period and as a perpetual estate
in trust, with no provision for a successor in trust, and by
reason thereof said will is illegal and void. It then avers
the probating of the will, the appointment of the adminis-
tratrix, etc., and prays an answer by the defendants, and for
an accounting, the appointment of a guardian *ad litem,* and
that said instrument in writing, and the probate thereof, may
be set aside and declared null and void and the estate dis-
tributed among the heirs-at-law of the testatrix. The above
mentioned heirs and the administratrix were made parties
defendant. A guardian *ad litem* was appointed for the in-
fant defendants, and he filed a general answer for them.
Matilda Cox answered in her own right and as executrix,
denying that said will professedly bequeathed a part of the
estate of the testatrix or undertook to create an estate in trust
as to the remainder, or that any part of the estate was not dis-
posed of by said will or any part remains intestate estate,
or that any perpetuity or perpetual trust was created by said
will or that there is no final distribution of the estate pro-
vided for. She admits the probating of the will and the is-
suance of letters testamentary, and denies that the testatrix
was of unsound mind or unduly influenced in the execution
of the same; admits that she entered into the possession,

214—11

control and management of the estate; avers that said instrument is the binding will of the deceased and prays to be hence dismissed. A jury was waived and the case submitted to the chancellor, who rendered a decree to the effect that said instrument is the last will and testament of Caroline V. Storms, deceased, and that she was at the time of its execution of sound mind and memory and under no duress or undue influence; that by said will the testatrix disposed of all the property and estate, real, personal and mixed, of which she died seized, and that no portion or part thereof remained intestate estate; that said will did not create a perpetuity or a perpetual estate in trust and was not obnoxious to the law against perpetuities.

The evidence, if any was heard before the chancellor, other than the will itself, is not preserved in the record. There seems to have been no real contest over the question of the testamentary capacity of Caroline V. Storms or that she was unduly influenced. In fact, it may well be doubted whether these allegations in the bill were made in good faith. However that may be, when the chancellor had entered the decree above set forth he had disposed of all the material issues made by the bill and answer, and the defendants were, upon that finding and decree, entitled to have the bill dismissed for want of equity at the costs of the complainant. For some reason he, however, proceeded to find that the testatrix, under the fifth clause of her will, gave and bequeathed unto the parties named therein an absolute estate in and to the money which should be realized from the sale and distribution of said estate after the death of her father and mother, and upon the converting of said estate into money and upon the distribution thereof to the legatees they would take absolute title in the money so to be distributed among them. This latter part of the decree furnishes the only ground of controversy in this court.

Plaintiff in error insists that by the fifth paragraph of the will the testatrix only intended to convey a life estate to

the beneficiaries, and that upon the death of any or all of them the respective shares of each would revert to the estate, to be distributed as intestate estate under the laws of descent in this State, whereas the defendants in error insist that the legatees, under that clause of the will, took the absolute ownership and title to the same.

While it is true that the presumption is always against intestacy, either in whole or in part, where a party has attempted to dispose of his or her estate by will, this is only a presumption and cannot be permitted to overcome the expressed language of the will. Where a testator or testatrix has failed to dispose of a part of his or her property but leaves the same as intestate estate, courts have no power to place upon the will a construction not justified by the language used. (*Minkler* v. *Simons*, 172 Ill. 323; *Magnuson* v. *Magnuson*, 197 id. 496.) It is well settled in this State that a life estate may be created in personal property. While it is true that so long as it is a question of construction whether the intention was to give but a life estate in such property, if it sufficiently appears that it cannot be enjoyed except in consuming the same it will be held that the intention was to give the absolute title to the beneficiary. In this case there seems to be no room for construction. The testatrix, by said fifth clause, expressly says, after naming the parties to whom the property is to be distributed: "For the terms of their natural lives, and at the death of either of the above named persons I direct that such bequest reverts to my estate." The will seems to have been drawn by a person more or less skilled in the use of legal terms and phrases, and we are at a loss to perceive what language could have been used to more clearly express a purpose to give a life estate to the beneficiaries and the remainder to her heirs under the Statute of Descent than is here expressed. We see no uncertainty or ambiguity in the provisions of this will. The testatrix manifestly intended, first, to provide for her father and mother during their respective lives. She created a trust,

out of which they were to have a monthly allowance and their home kept in repair or re-placed in case the same should be destroyed, the taxes paid, etc. At the death of the survivor of them the trust was to terminate, and the entire estate then, and not until then, be converted into money and divided among the beneficiaries named. It is not even shown by this record that the amount of the estate bequeathed to each of said beneficiaries would not, from its income, yield a substantial benefit to the donee or that the beneficial enjoyment of the same would reasonably result in its destruction.

It is not true, as argued by counsel for the defendants in error, that a bequest of money will always vest an absolute estate in the beneficiary on the theory that the enjoyment means its destruction. A trust may be created so that the beneficiary may have only a right to the interest or income of a fund and the fund itself be kept intact for remaindermen. *Welsch v. Belleville Savings Bank,* 94 Ill. 191; *Burnett v. Lester,* 53 id. 325; *Trogdon v. Murphy,* 85 id. 119; *Boyd v. Strahan,* 36 id. 355; *Thomas v. Miller,* 161 id. 60; *Kellett v. Shepard,* 139 id. 433.

The contention of counsel for defendants in error that the language, "at the death of either of the above named persons I direct that such bequest reverts to my estate," means the death of such beneficiaries before that of the testatrix, cannot be sustained. The language of the fifth clause is wholly inconsistent and irreconcilable with such an intention on the part of the testatrix.

We think the decree of the court below improperly construed the fifth clause of the will as giving the absolute title to the property therein named to the beneficiaries.

The decree of the circuit court must be reversed, and the cause will be remanded for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded.*