MARY W. ANDERSON *et al.* Plaintiffs in Error, *vs.* JAMES A. WILLIAMS, Defendant in Error.

*Opinion filed February 21, 1914—Rehearing denied April 8, 1914.*

1. WILLS—*when a trust provision does not create a perpetuity.* A devise of a specified portion of the income of a trust fund to a daughter of the testator during her lifetime, and after her death the income to be paid to the daughter's children who survived her and to the children of such child or children of the daughter as had pre-deceased her, the principal to be paid, in the proportions specified in the will, to each child or grandchild as it attained its majority, and providing for distribution of the share of any child or grandchild who died during its minority, does not create a perpetuity, where the will expressly provides that no child born after the death of the daughter (which could only refer to her grandchildren) should take any part of the fund or the income therefrom, thus requiring the ultimate vesting of the fee to be not more than twenty-one years after the death of the daughter.

2. TRUSTS—*when trust cannot be terminated by agreement of parties interested.* The rule permitting a trust to be terminated by a court of equity where the purpose of the trust has been practically accomplished and all parties interested in the trust fund are *sui juris* and consent to its termination, cannot be applied where there are contingent interests in the trust fund which cannot be determined until the happening of certain events or where the interests of the minors are involved.

3. SAME—*character of cestui que trust does not justify terminating a spendthrift trust.* Where the language used in a will is sufficient to create a spendthrift trust, the character of the *cestui que trust* with reference to prudence, economy and capacity to successfully manage the property cannot be considered in the construction of the trust provision nor in giving effect thereto and furnishes no ground for declaring the trust terminated.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Henry county; the Hon. EMERY C. GRAVES, Judge, presiding.

ANDERSON & ANDREWS, for plaintiffs in error.

EVANS & EVANS, and FRED W. POTTER, for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This case comes to this court by writ of *certiorari* to review a judgment of the Appellate Court reversing a decree of the circuit court of Henry county and remanding the cause, with directions.

William P. Williams, father of plaintiffs in error, Mary W. Anderson and Sarah E. Blood, died testate February 28, 1907, leaving no widow but leaving plaintiffs in error, defendant in error, James A. Williams, and Catherine Esmond, Annette Wylie and Carrie Patty, his only children and heirs-at-law. James A. Williams, the son, and Wesley D. Patty, husband of Carrie Patty, one of testator's daughters, were appointed trustees and executors in the will, and

all the real estate of the testator was devised to them in trust, to manage, rent and control and divide the net income therefrom semi-annually among the widow and children of the testator so long as the widow lived. One-third of the income was to be paid to the widow and one-sixth of the remainder to each of testator's children. After the death of the widow the executors were directed to sell said real estate and pay one-sixth of the proceeds to each of the testator's children except plaintiff in error Mary W. Anderson. One-sixth of the proceeds was directed to be invested in safe bonds, notes and mortgages yielding the largest possible interest compatible with safety to the principal, and the net income from the said one-sixth was to be paid to the said Mary W. Anderson semi-annually during her life, "and after her death that they pay the said net income of said fund semi-annually to such child or children as the said Mary W. Anderson may leave her surviving, and to the surviving child or children of any deceased child or children of the said Mary W. as shall be living at the time of such distribution and who shall not have arrived at his or her majority, *per stirpes* and not *per capita;* that each of the child or children of the said Mary W., and the surviving child or children of a deceased child or children of the said Mary W., being of the age of eighteen if female or twenty-one if male, shall take his or her share of both income and principal of said fund in the same portion as of the income, which shall be in full of his or her share in said fund and of the income thereof. It is further my will that no child or children born after the death of the said Mary W. shall be entitled to said fund nor any part thereof, nor of the income thereof; that in case any of said fund shall be left at any time and there be no one living who on arrival at his or her majority will be entitled to so much of said fund as then remains, that then, in that case, such remainder shall be immediately distributed between those

who shall be then living and who have before then received a share in said fund, in portions proportioned as in prior distributions of said trust fund."

At the time of the execution of the will, December 31, 1900, the plaintiff in error Sarah E. Blood was unmarried. She subsequently married Joseph R. Blood, and on the second day of December, 1901, the testator executed a codicil to his will, in which he recited the provisions made in his will for his daughter Sarah E., revoked said provisions, and directed that in lieu thereof said one-sixth of the proceeds of his estate be invested by the persons named as executors and trustees and the net income paid to Sarah E. Blood semi-annually during her life, and after her death the net income to be paid to such child or children of his said daughter as she should leave surviving her, until the youngest arrived at his or her majority, "provided that each child, upon arriving at its majority, shall be paid its proportionate share of said trust fund as it shall then be, principal and interest, and thereupon its interest in the income and profits as well as the principal of said trust fund shall then cease; that in case there shall be adult and minor children of the said Sarah Elizabeth and all of the minor children shall die before arriving at majority, then in that case I give and bequeath to such adult child or children of the said Sarah Elizabeth as shall be living at the time of the death of the last minor sister or brother, the balance of said trust fund then remaining and to their heirs and assigns forever; and in case the said Sarah Elizabeth shall die leaving no child or children her surviving or in case all of her surviving children shall die before reaching his or her majority, then immediately after her death, or immediately after the death of the last of her surviving child under the age of majority, I give and bequeath all of said trust fund then remaining in the hands of said trustees to such child or children of mine named above (*i. e.*, in my will,) as shall then be living, to be divided between them

share and share alike. It is further my will that the said moneys, and the several payments thereof to be paid to the Sarah Elizabeth, as aforesaid, shall be paid into her hands by said trustees, in all cases, in her own proper person, and not upon written or verbal order nor upon any assignment or transfer of the same by the said Sarah Elizabeth."

The will was admitted to probate in May, 1907. The wife of testator pre-deceased him, and the trustees sold the real estate March 1, 1909. It appears plaintiffs in error were dissatisfied with the provisions made for them by the will and codicil and talked of contesting the will or resisting its admission to probate. On the first of May, 1907, and before the admission of the will to probate, all of the children of the testator met at Princeton, Illinois, except one daughter, and she was represented by an attorney. At this meeting it is alleged all the heirs expressed a willingness and desire that plaintiffs in error should receive their respective shares of their father's estate absolutely, and that they agreed to release any right or interest in the shares of plaintiffs in error in the estate, so as to free them from any claim they might otherwise have therein as heirs. The three sisters of plaintiffs in error did execute such assignments, and it is alleged the brother, James A. Williams, agreed to release his interest, as heir, in the funds held in trust for the benefit of plaintiffs in error. Thereafter the will was admitted to probate, but the trustees refused to pay the funds held in trust for plaintiffs in error, to them. Plaintiff in error Mary W. Anderson thereupon filed a bill setting up and relying upon the Princeton agreement, the release by her sisters as heirs, and the agreement of her brother, James A. Williams, to release his interest, as heir, in and to the fund devised her by the will, as a termination of the trust. The bill also alleged that the trust was void, as being in violation of the rule against perpetuities, and that by reason of the assignments made by her sisters and the agreement to assign made by her brother, as heirs, no

one else was interested in the fund and she was entitled to
the principal of it. The bill prayed that plaintiff in error
Mary W. Anderson be declared to be the owner of said
fund without the intervention of a trustee; that said fund
be decreed to be freed of any right of her brother and sis-
ters, who were made defendants to the bill, accruing either
under the will or by virtue of their being heirs of the tes-
tator. The bill also alleged that the trustees had not loaned
the money as directed by the will but had deposited it in
various banks, where it was drawing only three per cent in-
terest per annum. The prayer of the bill was that an ac-
count be taken and that the trustees be charged with such
interest on the fund as they could have secured by due dili-
gence in following the directions of the will. Shortly after-
wards plaintiff in error Sarah E. Blood filed a bill praying
for the same relief. In her bill she set up the Princeton.
agreement. She further alleged that her father was preju-
diced against and unfriendly to Joseph R. Blood, the man
she married, and that it was to prevent him from receiving
any of the testator's property that he made the codicil to
his will and not because he lacked confidence in her ability
to manage and care for the property; that Joseph R. Blood
died in April, 1908; that no child or children were born of
her marriage to him, and that she is now a widow, fifty-
three years old, and childless. The bill alleges that the
codicil only conditionally canceled the provision made for
Sarah E. in the original will, and that when her husband,
Joseph R. Blood, died, the codicil became inoperative and
the original provision became in full force and effect, the
same as if no codicil had ever been written. Answers were
filed to the bills by the trustees, issues were made, and they
were referred to a master in chancery, with directions to
take the testimony and report his conclusions of law and
fact. The master reported recommending a decree grant-
ing the relief prayed, and the chancellor, after overruling
exceptions to the report, entered a decree accordingly. The

trustees prosecuted an appeal to the Appellate Court for the Second District. That court reversed the decree of the circuit court and remanded the case, with directions to the circuit court to dismiss both bills. The cases were consolidated in the circuit and Appellate Courts, and upon the petition of the complainants below this court granted a writ of *certiorari.*

The will gave the trustees one-sixth of the net proceeds of the sale of the testator's real estate upon the following trusts: To pay the net income from it to Mary W. Anderson during her life and after her death to pay the income to such child or children of said Mary W. Anderson as survived her, and if any child or children of said Mary W. should have died before her death, leaving a child or children surviving her, then such surviving grandchildren of Mary W. Anderson were to receive the deceased parent's share. When the children of Mary W. Anderson and the grandchildren surviving her should attain their majorities, (the females eighteen and the males twenty-one years of age,) the principal of the fund was to be paid to them in the proportions mentioned in the will. The persons who took after the death of Mary W. Anderson, if of age at the time of her death, were entitled to their share of the principal of the fund at once. If any of them were minors their interest did not come into possession until they attained their majority, and until that time they were to receive the income from their share. The will expressly provided that no child or children born after the death of Mary W. Anderson should take any part of the fund or the income therefrom. This could only mean that no grandchild of Mary W. Anderson born after her death should take under the will, so that all the persons authorized to take under said will would be in being at the time of Mary W. Anderson's death, and if any of the beneficiaries were minors, the distribution of the principal of their share of the trust fund was postponed until such of them as were

males became twenty-one years old and the females eighteen years old. If such minor beneficiaries died before attaining their majority their share of the fund went at once to the surviving beneficiaries of said trust fund. By no possibility, therefore, could the ultimate vesting, both in interest and possession, be postponed beyond a period of twenty-one years after the death of Mary W. Anderson. The devise was not in violation of the rule against perpetuities but was a valid trust.

Mary W. Anderson has four minor children, who, if they survive her, will take an interest in the trust fund, and the trust was created, in part, for their benefit. It could not, therefore, be terminated by the consent and agreement of Mary W. Anderson, the other adult heirs of the testator and the trustees. Where all the parties interested in the trust fund are *sui juris* they may consent to a termination of the trust and distribution of the fund, (2 Perry on Trusts, sec. 920,) but this rule has never been applied where there are contingent interests in the trust which cannot be determined until the happening of certain events or where the interests of minors are involved. (*Brandenburg* v. *Thorndike,* [Mass.] 28 N. E. Rep. 575; 39 Cyc. 97.) "Where a testator by his will creates a trust and fixes the duration thereof, his direction will, if not in violation of the rule against perpetuities, be given effect and the trust will continue for the time indicated." (*Kohtz* v. *Eldred,* 208 Ill. 60.) It is only where the interference of a court will not disturb or destroy the trust scheme that it will decree a dissolution of the trust before the expiration of the term for which it was created. (*Cuthbert* v. *Chauvet,* 136 N. Y. 326.) Cases on this subject are not numerous, but the termination of trusts upon the application and agreement of the interested parties appears to be limited to cases where the design and object of the trust have been practically accomplished and all the interests created by it have become vested.

The trust created by the codicil for the benefit of Sarah E. Blood is a spendthrift trust. It is insisted the provision made for her in the original will was revoked and the codicil made because of her marriage to Joseph R. Blood, against whom the testator was prejudiced and in whose business abilities he had no confidence, and that it was not intended the trust should continue if Joseph R. Blood predeceased his wife. Mrs. Blood's position, as alleged in her bill and as stated by her counsel in argument, is, that because Joseph R. Blood was objectionable to her father he made the codicil to prevent said Joseph R. Blood from ever receiving any of the property, and that the testator had confidence in the ability of his daughter, Mrs. Blood, to manage and take care of her property, and that the codicil should be construed to have only conditionally revoked the provision in the original will for Mrs. Blood's benefit and that it ceased to be operative and of effect when Joseph R. Blood died, leaving Sarah E. Blood his widow, now fifty-three years old, and childless. It would have been legal for the testator to have provided in the codicil for the termination of the trust and the payment to Mrs. Blood of the principal of the fund in case she survived her husband, but this contingency he did not provide for. There is nothing in the codicil to indicate that the testator desired the provision of the original will for the benefit of Mrs. Blood should be revived and become effective if she survived her husband, or that he did not wish the ultimate remainder to be effective, according to the provisions of the codicil, if Mrs. Blood should leave no child or children surviving her. The codicil is not ambiguous, and we cannot give it a construction contrary to what its plain language imports. The fact, if it is a fact, as contended by Mrs. Blood's counsel, that she is a prudent, economical woman, capable of successfully managing and caring for her property, cannot be considered in the construction of the codicil or upon the effect to be given it. We have held that where the lan-

guage used is sufficient to create a spendthrift trust, whether the person for whose use it was created was, in fact, a spendthrift is not open to inquiry. *Wagner* v. *Wagner,* 244 Ill. 101.

The record in this case upon the subject of the failure of the trustees to loan the trust funds at a higher rate of interest than three per cent is too unsatisfactory for us to make any adjudication upon it.

We think the Appellate Court correctly reversed the decree of the circuit court and directed the bills to be dismissed, and that judgment will be affirmed without prejudice to the right of plaintiffs in error to call upon the trustees for a proper accounting in the court having jurisdiction over the administration of the trust.

*Judgment affirmed.*