Ottilia Sueske and Caroline C. Sueske, Appellees, v. Frank Schofield, Executor and Trustee under Last Will and Testament of Elmer F. Sueske, Deceased, et al., Appellants.

Frank Schofield, Executor and Trustee under Last Will and Testament of Elmer F. Sueske, Deceased, Appellant, v. Ottilia Sueske et al., Appellees.

Gen. No. 41,144.

Opinion

filed June 19, 1940.

David K. Tone, of Chicago, for appellant.

Cochrane & George, of Chicago, for appellees.

Mr. Justice Hebel delivered the opinion of the court.

The defendant, Frank Schofield, as executor and trustee under the last will and testament of Elmer F. Sueske, deceased, appealed to the Supreme Court on the grounds that the consideration of testator's will involved a freehold. The Supreme Court, however, in consideration of the matter, held that the case was one that did not involve a freehold, and transferred the case to this court for the purpose of considering the matters that are called to the attention of the Appellate Court by the several briefs filed.

The plaintiffs in this case filed their complaint in chancery in the circuit court of Cook county, and made therein as principal defendant, the appellant, Frank Schofield, as executor and trustee under the last will and testament of Elmer F. Sueske, deceased. The other defendants to the complaint are Emma M. Sueske, widow of the deceased and Walter C. Sueske, his brother. The complaint by its prayer asks for a construction of the will of Elmer F. Sueske, and recites facts as to the interests of the parties and the rights accrued by reason of the renunciation by the widow of the deceased, and their theory of a proper construction of the will. They allege that by reason of the widow's renunciation plaintiffs became the owners of the entire legal and equitable interest in and to the trust property, and ask that the decree of the court so find, and that the trust created by the will of Elmer F. Sueske be terminated and the defendant, Frank Schofield, render an accounting of his trusteeship and turn over to the plaintiffs the corpus of the trust estate.

The complaint set forth the death of the testator on March 6, 1934, the admission of his will to probate on April 16, 1934, and the issuance of letters testamentary

to the defendant, Frank Schofield, as executor, and attaches thereto a copy of the will. The plaintiffs allege that within one year from the issuance of letters testamentary, the deceased's widow, the defendant, Emma M. Sueske, renounced the provisions of said will and elected to take under section 12 of the Dower Act [Ill. Rev. Stat. 1939, ch. 41, sec. 12; Jones Ill. Stats. Ann. 41.12]; that the defendant Frank Schofield, as executor, had filed his amended final account and report in said estate and objections filed thereto had been sustained to that part of the report, making distribution under paragraph 2 of the will, and attached to the complaint a copy of such order.

The plaintiffs further allege and refer to the various provisions of the will under paragraph "fifth" thereof, creating the trust and the administration and disposition thereof; and allege who are the heirs and next of kin of the deceased, being the plaintiffs, Ottilia Sueske, his mother, and Caroline C. Sueske, his sister, and the defendant, Walter C. Sueske, his brother. It is further alleged that the will was executed on February 8, 1934, while the testator was confined to a hospital suffering from his last illness in prospect of death, and details the property owned by him at that time, being the real estate located at Antioch, Lake county, Illinois, a small amount of personal property and 1,480 shares of the capital stock of the Sueske Brass & Copper Company, of a capitalization of 1,500 shares; that said corporation owns valuable property and assets and its business was operated and conducted by deceased at a very substantial profit; that the major part of testator's estate consisted of this capital stock of the Sueske Brass & Copper Co. and the scheme of the testator in creating the trust was that the operation and control of the business could be kept intact and thereby provide an income for his mother and sister, the plaintiffs, for their lives and preserve the corpus of the estate for his wife and her descendants; and that by reason of the renunciation of the widow she became entitled to and had re-

ceived one-half of all the real and personal estate of said deceased after the payment of the debts and claims against said estate, and thereupon had no further rights or interest in said trust estate.

The complaint further alleges that by reason of subparagraph "H" of paragraph "fifth" of said will plaintiffs became the owners of the entire legal and beneficial interest in and to said trust property. That by reason of said renunciation, the purposes of said trust to preserve the corpus of said estate for said Emma M. Sueske cannot be carried out and there was no reason why said trust should not be terminated immediately. That both plaintiffs are of legal age and under no legal restrictions and both have agreed to have the trust terminated and so requested of the said Frank Schofield that he deliver the trust property to them, but he had refused.

It is further alleged that said Frank Schofield took title to said 1,480 shares of stock of the Sueske Brass & Copper Company and by means of its voting power held a stockholders' meeting and plaintiff, Caroline C. Sueske, who had been a director of the company since it was organized was removed and a new board of directors elected, consisting of himself, Frank Schofield, and two other persons by him designated and thereafter had himself elected president of the company at a salary of $10,000 a year; that the business of the company had made large profits for a number of years and said Frank Schofield was interested in continuing the trust so he might receive compensation as trustee and compensation from the company; and that a continuance of the trust will serve no beneficial purpose and is solely for the benefit of the trustee, and the expenses incident thereto are consuming the money which belongs to and should be received by the plaintiffs.

A copy of the will is attached to the complaint and the plaintiffs call our attention to the provisions thereof, which will contains 10 paragraphs. The first paragraph

provides for the payment of debts and expenses of administration. The second paragraph gives the jewelry, household furniture and other articles of personal property to the testator's wife. The third, gives the sum of $1,500 to an aunt. The fourth, devises the testator's summer home located at Antioch, Illinois, to his wife. The fifth, gives, bequeaths and devises to Frank Schofield, all the rest, residue and remainder of the testator's property.

This fifth paragraph has 12 subparagraphs, designed from (a) to l inclusive. Subparagraph (a) provides —"During the period of trusteeship as hereinafter fixed" the trustee shall hold and manage the trust estate, and then enumerates the usual powers given to trustees. Subparagraph (b) further enumerates usual powers given to trustees. Subparagraph (c) directs the trustee to set apart the sum of $2,500 and within a period of two years from testator's death to pay same to the employees of the Sueske Brass & Copper Co. Subparagraph (d) directs the trustee to set aside $3,000 and pay the income therefrom to testator's brother, Walter C. Sueske, until he shall arrive at the age of 30 years (Walter Sueske arrived at the age of 30 years in August, 1934). This paragraph further provides for the disposition of this sum in the event Walter C. Sueske should die before arriving at the age of 30 years; first, to be paid over in equal shares to the mother and sister or the survivor, and in the event of the death of both the mother and sister, then to be paid to the wife.

The following subparagraphs, that is (e), (f), (g) and (h) are, as stated by the plaintiff, chiefly concerned in this litigation. Subparagraph (e) directs the trustee to set apart 750 shares of the capital stock of Sueske Brass & Copper Co. and to pay over the net income therefrom to the testator's wife, Emma M. Sueske, in convenient instalments during her lifetime. Upon her death said shares to be transferred and turned over to

the wife's descendants, if she has any, and if she dies leaving no descendants, then to her lawful heirs. The paragraph further directs, "It is my will and desire that the shares of my said estate so set apart for the use and benefit of my said beloved wife, Emma M. Sueske, as aforesaid, may be disposed of by my said beloved wife under a last will and testament to whomsoever she may desire." And further the will directs the trustee, in the event of the sale of the business of the corporation, to distribute the proceeds thereof in accordance with the terms and provisions of her will.

Subparagraph (f) directs the trustee to set apart 370 shares of the capital stock of the Sueske Brass & Copper Co., and pay over the net income therefrom to his mother, Ottilia Sueske, in convenient instalments during her lifetime and upon her death such income to be paid to his sister, Caroline C. Sueske, during her lifetime and upon the death of the sister, "the share of my estate so set apart for the use and benefit of my beloved mother, shall be conveyed, transferred and assigned to my beloved wife, Emma M. Sueske, or if she be deceased, to her descendants, if she has any, *per stirpes* and not *per capita,* or if she has no descendants, then to her lawful heirs."

Subparagraph (g) directs the trustee to set aside 360 shares of the capital stock of the Sueske Brass & Copper Co. and to pay the net income therefrom to his sister, Caroline C. Sueske, during her lifetime and upon her death the share of the estate so set apart for her use and benefit "shall be conveyed, transferred and assigned to my beloved wife, Emma M. Sueske" and proceeds with the identical wording used in subparagraph (f).

Subparagraph (h) directs that the rest, residue and remainder "of my trust estate after setting aside the portions referred to in paragraphs (c), (d), (e), (f) and (g) hereof," shall by his trustee be transferred, as-

signed and paid over to his wife, sister and mother in equal shares.

Subparagraph (j) provides ''The provisions of this will for my said wife, Emma M. Sueske, are to be in full, and in lieu of her dower in my estate.''

It is further suggested by the plaintiffs that the remaining subparagraphs deal with the powers given to the trustee, the payment of a fair compensation for his services, and that the said duties shall devolve upon any successor trustee.

The sixth paragraph, appoints the Harris Trust and Savings Bank, as successor trustee. Paragraphs 7 to 10, inclusive, have to do with the appointment of Frank Schofield as executor and other formal provisions of a will.

The defendant, Walter C. Sueske, did not appear and his default was entered and the complaint was taken as confessed as to him.

The defendant, Frank Schofield, filed his answer to said complaint and admitted matters of record, set forth in the complaint, substantially as set forth in his brief, and also attached thereto a counterclaim in which he alleges the facts of the deceased dying leaving a will and its admission to probate and the renunciation by the widow. Also, that on December 30, 1935, plaintiffs had served upon him a written request to turn over to them the residue of the trust estate, which under the terms of said will he had no right to comply with. The counterclaim then takes up each of subparagraphs (e), (f), (g) and (h), and states that as to subparagraph (e) there is doubt and uncertainty as to the disposition of 10 shares remaining after the widow by her renunciation, became entitled to and took therefrom 740 shares from the 750 shares set apart in said paragraph, and the will in that regard should be construed and the duties of the trustee should be defined by the decree of the court. The counterclaim further alleges that there is a dispute and conflict as to the construction of said subparagraphs (f) and (g) and alleges that under a

proper construction it is the duty of the trustee to hold said shares of stock therein mentioned, being 370 shares and 360 shares, until the death of Ottilia Sueske, Caroline C. Sueske and Emma M. Sueske and then transfer the corpus of said trust estate to the descendants of Emma M. Sueske, if any, and if she has no descendants, then to her lawful heirs. Also that in the event Emma M. Sueske is living at the death of Ottilia and Caroline C. Sueske, then the income derived from said shares should be accumulated and become a part of the corpus of said estate until the death of said Emma M. Sueske. That the court by its final decree should construe said paragraphs for the protection of the defendant, Frank Schofield, and determine definitely his rights and duties as such trustee, and of the other parties interested as devisees and legatees under said will.

The counterclaim demands the judgment of the court that it construe each of said subparagraphs and define the rights and duties of the defendant with reference to the same and further asks the court to fix and determine the reasonable compensation of the defendant as trustee and the reasonable compensation of his solicitor employed in this proceeding.

The defendant, Emma M. Sueske, answered the complaint and admitted the facts of her renunciation of the will and states that the final account and report of the executor of the will of Elmer F. Sueske had been approved by the probate court of Cook county; that she received the property and cash due to her and had delivered her voucher for the same, and said executor had been discharged by said court; and her answer further alleges that in addition to one-half of said real estate, she was entitled to her homestead rights in the remaining half, and that the court by its decree should construe said will and determine where the title to the remaining one-half of said real estate should rest, so that there would be no doubt or uncertainty as to the same.

The decree is substantially as set forth by the defendant in the following paragraphs;

"(1) That half of the real estate, subject to the homestead of the widow, relinquished by the widow, passed as intestate property to the heirs at law of the Decedent, as follows; One-quarter to Ottilia Sueske, the Decedent's mother; one-eighth to Caroline C. Sueske, his sister, and one-eighth to Walter C. Sueske, a brother.

"(2) That the title to the *corpus* of the 370 shares and the 360 shares of the stock of the Copper Company, the income of which was bequeathed to the mother and sister for life, under paragraph fifth (f) and (g) of said Will vested in the mother and sister as of the time of the widow's renunciation of the Will.

"(3) That the title to the *corpus* of the ten shares of the stock of the Copper Company, that remained after the widow had taken 740 shares of the 750 shares, the income of which was bequeathed to the widow by Will passed under paragraph fifth (h) of the Will to the mother and the sister in equal shares.

"(4) That the trust created by the Will of the Decedent should be immediately terminated and dissolved.

"(5) That the widow by her renunciation became entitled and had received one-half of the real and personal property of the Testator after payment of all debts and claims.

"(6) That Defendant Frank Schofield should forthwith deliver to the Plaintiffs certificates for the ten shares and for the 730 shares of the stock of the Copper Company, being all the shares that remained after the Trustee had delivered 740 shares of said stock to the widow." the above being in substance the terms of the decree that was entered by the court, the outline of which is not objected to by the plaintiffs.

The first question that we are to consider is that of the defendant's contention that the court erred in holding that by reason of the widow renouncing the will, the one-half of the real estate relinquished became intestate property. By paragraph "Fourth" of the will the testator devised all his real estate consisting of a home in Antioch to his widow. When the widow renounced

she took one-half of that real estate and relinquished the other one-half. The trial court held that the one-half of the real estate relinquished by the widow became intestate property and entered a decree to that effect. Defendant contends that the court erred in so holding.

In support of the position of the defendant, as we have outlined, defendant cites the case of *Marvin v. Ledwith*, 111 Ill. 144, in which it appears that one Robert Franey died, leaving surviving him Mary Franey, his widow, but no children or descendants of any children, but his only heir-at-law was his sister, Mary Brown. Robert Franey gave a life estate in his real estate by his will to his wife, the remainder to one John Ledwith. Mary Franey renounced a devise in her favor. Mary Brown, sister, and Matthew Marvin, the grantee of the sister, of one-half of said premises filed a bill for the partition of said premises, claiming that by said renunciation said premises passed as intestate property to Mary Brown, the sole heir-at-law of Robert Franey. The trial court dismissed the bill for want of equity and this court affirmed the decree. Answering the contention that one-half of said premises that remained after the renunciation should be distributed as intestate property the court said:

"It is still testate property, and is not subject to distribution among the heirs of the decedent, as is intestate property. In no view that can be taken could the property be divided among the heirs, and complainant's bill was therefore properly dismissed." and defendant cites cases that have passed upon the question and have approved the rule that was announced in the case that we have quoted, which cases cited are, *Dunshee v. Dunshee*, 251 Ill. 405; *Canavan v. McNulty*, 328 Ill. 388, and other authorities that have followed the authorities that have been submitted.

Defendant contends that as the result of the trial court's error in decreeing that one-half of the real estate of the decedent should be distributed as intestate

property, Walter C. Sueske obtained by the decree one-eighth of the real estate. In other words, that under the will, the only thing that Walter C. Sueske was entitled to was $3,000, but that, under the will as construed by the trial court, he gets $3,000 in cash and in addition thereto one-eighth of the real estate; and that the decree brought about a distribution of the decedent's property contrary to the intention of the testator and the terms of his will.

The plaintiffs do not agree that the court erred as suggested by the defendant, but states that a testator is presumed to have intended to dispose of his property and leave no part intestate unless a contrary intention on the part of the testator clearly appears, and calls attention that the will of Elmer F. Sueske had no general residuary clause. That the second paragraph gives to the testator's widow the household furniture and other personal belongings. That the identical words are employed by the testator in the fourth paragraph to dispose of his real estate as were employed by him in the second paragraph. The complaint filed alleges in paragraph 5 thereof that the probate court had entered an order sustaining an objection, to the executor's final account and report making distribution and attached to the complaint as an exhibit, a copy of the judgment order of that court; and that defendant Schofield's answer admits the averments of paragraph 5 of the complaint. The probate court held that by reason of the renunciation by the widow, the property and assets referred to in said second paragraph exclusive of the one-half taken by Emma M. Sueske, became intestate property and descended to the heirs-at-law of the deceased under the statute of descent and distribution and directed the executor to make distribution accordingly. No appeal was perfected from this order and the executor made distribution and was discharged as such; and that defendant Schofield, as executor, acquiesced in the order of the probate court interpreting

paragraph "second" of the will and entered prior to the filing of the complaint on January 3, 1936, and that said order has become final.

The plaintiffs further suggest that section 40 of the Practice Act, ch. 110, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 104.040], provides that allegations in a pleading which are not denied, shall be deemed to be admitted; and that the allegation in the complaint that this one-half of the real estate descended to the heirs-at-law of Elmer F. Sueske, as intestate property, is admitted by defendant's pleadings. And further that defendant does not allege that this finding of the trial court was an error that was prejudicial to the trustee. That, if this property passes under the will as defendant claims, then under subparagraph (h) of paragraph fifth, the mother and sister would take this real estate; neither the mother, sister nor brother are complaining in this regard.

Plaintiffs agree with the contention of the defendant that renunciation by the widow does not destroy the will and does not render any part of the testator's property intestate if there is any provision in the will whereby the property may be administered as testate property. Defendant, however, does not attempt to point out wherein it was the intention of the testator that in the event of the renunciation by the widow, the one-half of the real estate should be disposed of under the provisions of his will as testate property.

In the case of *Foss v. State Bank & Trust Co.,* 343 Ill. 94, the court said: "While it is true that the presumption is always against intestacy, either in whole or in part, where a party has attempted to dispose of property by will, this is only a presumption and does not warrant this court, under the guise of construing a will, to add provisions which are offered in place of those omitted. Such presumptions cannot be indulged in either to overcome express language in a will (*Wixon v. Watson,* 214 Ill. 158,) or to supply an omission made by

oversight, where no language is used to show an intention on the part of testator to dispose of the property." and in the case of *Wixon v. Watson*, 214 Ill. 158, the court said:

"While it is true that the presumption is always against intestacy, either in whole or in part, where a party has attempted to dispose of his or her estate by will, this is only a presumption and cannot be permitted to overcome the expressed language of the will. Where a testator or testatrix has failed to dispose of a part of his or her property but leaves the same as intestate estate, courts have no power to place upon the will a construction not justified by the language used."

The plaintiffs rely on the will and suggest that the testator specifically directed what property should constitute the trust estate, that is, 1,480 shares of the Sueske Brass & Copper Co., specified in subparagraphs (e), (f) and (g) and none other; and that then in subparagraph (h) he directs that "The rest, residue and remainder of my trust estate" be transferred, assigned and paid over to his wife, mother and sister.

After consideration of the question that is involved we are of the opinion that from the express terms of the will itself the testator declared his intention by specifically directing what property should constitute the trust, that is, the shares of stock of the Sueske Brass & Copper Company as set forth in the will, and having done so, the intention is plain, and the court is obliged to consider the words which were used by the testator in his will to determine the property that should constitute the trust estate. As we have stated, the trust estate is limited to the 1,480 shares of the Sueske Brass and Copper Company stock as specified by the terms of the will. This was the express language used, and we are of the opinion on this question that the court did not err in finding in its decree that one-half of the real estate, subject to the homestead of the widow, relin-

quished by the widow, passed as intestate property to the heirs-at-law of the decedent.

It is contended by the defendant that the court erred in holding that the widow by renouncing caused the title to the corpus of the 370 and the 360 shares of stock to vest at once in the mother and sister, and points to the subparagraph (e) of the fifth paragraph of the will wherein the trustee was directed to pay the income of 750 shares of the capital stock of the Copper company to his wife during her life, and upon her death said trustee was to convey the corpus of said shares to the wife's descendants if she left any, and if not, to her heirs subject to the right of the wife to dispose of said shares by her will. By subparagraph (f), the trustee was directed to pay the income on 370 shares of the Copper Company stock to the decedent's mother during her lifetime, and upon her death to his sister Caroline during her lifetime, and upon her death the corpus of said shares should by said trustee be transferred and assigned to his wife, or if she was dead to her descendants if she had any, and if she had no descendants, then to her lawful heirs. Further, it was provided by subparagraph (g) that the trustee pay the income on 360 shares of the capital stock of the Copper Company to Caroline C. Sueske, the sister of decedent, during her lifetime and upon her death, the trustee was to convey and transfer the corpus of said shares to the testator's wife, or if she was dead, to her descendants, if she had any and if she had no descendants, then to her lawful heirs.

Then, it is further provided by subparagraph (h) that "the rest, residue and remainder of the trust estate, after setting aside the portions referred to in subparagraphs (c), (d), (e), (f) and (g) hereof,'' should be paid over in equal shares to his wife, his sister Caroline, and his mother Ottilia.

The defendant further then contends that it thus appears that the 1,480 shares of capital stock of the Sueske

Brass & Copper Company, disposed of under subparagraphs (e), (f) and (g) were expressly excluded from passing under the residuary clause of subparagraph (h) and consequently neither of the plaintiffs acquired any interest in the shares of the capital stock of the Copper Company under the provisions of subparagraph (h), and then points to what counsel for the plaintiffs states, namely, that plaintiffs acquired the corpus of the 370 and the 360 shares when the widow renounced the provisions of the will made for her benefit. Defendant answers that when the widow renounced the provisions under the will, that eliminated from the will all devises and bequests made in favor of the widow, but all other provisions of the will remained in force as written by the testator.

Defendant calls our attention to the case of *Franklin v. Hastings,* 253 Ill. 46, wherein the wife died leaving no children or descendants of a child, and after making certain devises to her husband, gave to the Lexington Public Library, the Illinois Western University and her husband each one-third of the residue of her estate. The husband renounced the will, and the other two residuary legatees, the Lexington Public Library and the Illinois Western University, claimed that they, on account of such renunciation, acquired the entire residuary bequests. The trial court sustained their claim, and the Supreme Court upon this question said:

"The provisions made by the will for the surviving husband became inoperative when he renounced the will but all its other provisions remained in force. . . . If by reason of the renunciation of the will this amount is reduced below what it would otherwise be, the bequests to the two residuary legatees must be reduced equally but they cannot be increased."

Defendant also cites the case of *McGee v. Vandeventer,* 326 Ill. 425, wherein the widow renounced certain bequests made for her benefit in lieu of dower by the will of her deceased husband. The same claim was

made by her counsel as is made here, that the property relinquished by the renunciation of the widow became intestate property. The court held that by the renunciation, ''The will is not destroyed, nor is any part of the estate rendered intestate.'' To the like effect, *Wakefield v. Wakefield,* 256 Ill. 296.

Our attention is called to the provision of the will that the testator left the income from certain shares of capital stock to the mother and the sister of testator for life, but did not give them the corpus of any of these shares. Under the decisions which the defendant has quoted, renunciation by the widow of provisions made in the will for her benefit did not change the will so far as the mother and sister are concerned. The renunciation took nothing from the mother and sister and gave them nothing. They were entitled to the income only from 730 shares of the capital stock for their respective lives. Further, that the will is to be carried out; and they are entitled to that income now and nothing more. See also the case of *Anderson v. Williams,* 262 Ill. 308, and *Baley v. Strahan,* 314 Ill. 213.

The plaintiffs in answer to the suggestions that were offered by the defendant makes the statement that in both plaintiffs' complaint and the answer and counterclaim of defendant, Frank Schofield, as trustee, they ask that the will of Elmer F. Sueske be construed. In arriving at a proper construction, the intention of the testator as expressed in the will is the most important factor to consider. In determining the testator's intention, it is proper to consider the relation of the parties, the situation and nature of the subject matter, the purpose of the instrument and the motives which might reasonably be supposed to influence him in the disposition of his property.

It appears from the evidence that the testator was the president and treasurer of the Sueske Brass & Copper Co., located at 15 North Peoria street, Chicago, Illinois, which was incorporated by him in the year 1927, with a

capitalization of $50,000. Within a short time the capital stock of the company was raised to $150,000. The stock of the company consisted of 1,500 shares of which the testator owned 1,480. Ten shares each were issued to the defendant, Schofield, and the plaintiff, Caroline C. Sueske, and these three constituted the board of directors, and the sister, Caroline Sueske, was secretary of the company. The deceased operated and managed the business as his own, and the uncontradicted facts show that large profits were made. Within a period of five years a bond issue of $33,000 was entirely paid and retired and the personal withdrawals of the deceased during this time amounted to about $130,000 or a profit of over $30,000 a year. It appears that he drew a large expense account, and had a summer home at Antioch, Illinois. No formal dividends were declared but the profits were taken by the deceased as it appears that he regarded himself as the sole owner. It is manifest that both Mr. Schofield and Caroline C. Sueske regarded the stock issued to them as qualifying shares, and were so treated by the testator. The mother and sister had put $4,500 into the company when it was organized. The testator became sick and went to the Garfield Park Hospital on October 30, 1933, and remained there until his death on March 6, 1934, and his will was executed shortly before his death. He was 42 years of age and had no children. His wife was about his same age. He also left surviving him his widow mother who was 65 years of age, his sister Caroline, a spinster, 38 years of age, and his brother Walter.

The only income-producing asset he possessed was the Sueske Brass & Copper Company and it had proved to be an exceedingly profitable business. Except for a bequest of $1,500 to an aunt, he gave all his property, other than the shares of stock in his company, to his wife, Emma M. Sueske, and it is apparent that he imparted to Mr. Schofield, his desire to keep this profitable busines intact, and to provide an income for his

mother and sister during their lifetime as well as for his wife and upon the death of his mother and sister, his wife should have all of his estate and use of the same as her absolute property.

It is well to have in mind the effect of the renunciation by the widow of the provisions for her benefit made by her husband in his will, and the general rule is that such renunciation is a rejection of such provisions and in effect obliterates the provisions for her that were made by her husband in his last will and testament. The authorities on this question seem to be clear and it would not add anything by a statement of our views to those that have been expressed by our Supreme Court. In the case of *McGee v. Vandeventer*, 326 Ill. 425, the court said: "A provision in a husband's will for his wife is in legal effect an offer on his part to purchase her statutory interest in his estate for the benefit of the estate. (Citing cases.) Her renunciation was a rejection of the provision made for her, and its effect was to obliterate from the will such provision, leaving the other provisions operative on the part of the estate not including her statutory interest." and also concerning this question, in the case of *Dunshee v. Dunshee*, 251 Ill. 405, the court said:

"The provision in the will in favor of Sadie K. Dunshee, the widow, in legal effect was no more than an offer on the part of the testator to purchase her statutory interest in his estate for the benefit of his estate, (citing cases) and if she refused to accept the offer made her in the will and elected to take under the statute, she had her interest in his estate, under the statute, the same as if there were no will." Then again in the case of *Spaulding v. Lackey*, 340 Ill. 572, the court said:

"The widow, by her renunciation, rejected the provision which the testator had made for her and in effect obliterated it from the will; and the remaining provisions of that instrument were left to operate upon

the part of the estate not included within her statutory share or interest.''

So that in view of these holdings, the question, of course, is as to whether or not the fact of the widow's renunciation accelerated the interests of Ottilia Sueske and Caroline C. Sueske so that they would be entitled to the immediate transfer to them of the title to the shares of stock from which they were to receive the income, according to the provision of the will, during their respective lives. There is no question as to the construction of the will but that the provision is plain and expresses the wishes of the testator when it provides that the income of 370 shares and 360 shares of this Copper Company stock mentioned in subparagraphs (f) and (g) of the will shall go to the mother and sister for their lives and the remainder, on their death, to the widow, or her descendants, if any, and if she has no descendants, to her heirs. We would have to assume that by the renunciation of the widow the remainder to her was inoperative and that the subsequent remainders were accelerated, in other words, that on the death of the widow before the death of the mother and sister, if the will had provided that the remainder should go to the mother and the sister, then the doctrine of acceleration might have applied, but inasmuch as no remainder is limited to the mother and sister, the relinquishment of the estate limited to Emma M. Sueske does not result in vesting the corpus of the 730 shares in question in the plaintiffs. Upon a discussion of the question that arose in *Blatchford v. Newberry,* 99 Ill. 11, where it was contended that the widow's renunciation of the will accelerated the life estate limited to her by the will and resulted in making it the duty of the trustee to distribute the property to the remaindermen, the court said:

''We can come but to the one conclusion, that the period of distribution appointed by the will has not yet arrived, and will not, until the death of Mrs. Newberry.

To determine otherwise would seem to us to be, in this particular, making a will for the testator, instead of expounding the one which he himself made.'' and again in *Slocum v. Hagaman,* 176 Ill. 533, the court said—''where the intention of the testator is that the remainder should not take effect until the expiration of the life of a prior donee, the remainder will not be accelerated.'' And to the same effect is *Sherman v. Flack,* 283 Ill. 457, where the court said: ''The doctrine of acceleration of remainders proceeds upon the supposition that although the ultimate devise is in terms not to take effect in possession until the death of the life tenant, yet in point of fact it is to be read as a limitation of a remainder to take effect in every event which removes the prior estate out of the way. The doctrine is founded upon the presumed intention of the testator that the remainder-man should take, on the failure of the previous estate, notwithstanding the prior donee may be still alive, and is applied in promotion of the presumed intention of the testator and not to defeat his intention. Where the intention of the testator is evident that the remainder should not take effect until the expiration of the life of the prior donee the remainder will not be accelerated.''

This clearly appears from the will where it provides that the income from the stock in question is to be paid to Ottilia Sueske and Caroline C. Sueske during the period of their lives, that the acceleration is not to take place until upon the death of the prior donees, and the estate will not be destroyed, but will be preserved for the benefit of the disappointed devisees.

It follows from what we have said that there is no person in being ascertained and ready to take possession of the remainder. Whether the corpus of these 360 shares is to go to the wife's descendants or to her heirs cannot now be ascertained and, therefore, the remainder is contingent according to the rule of law applied by our Supreme Court, where, in the case of

*Riddle v. Killian*, 366 Ill. 294, the court said that the effect of the will there under consideration was "to give his wife, the widow, a life estate in the property described in the fifth section, with a remainder to their son William, if he should be living at the time of the death of the life tenant." The court further said:

"The remainder to William was made contingent upon surviving the life tenant and, therefore, a contingent remainder." and the court said further:

"A common example of a contingent remainder is where, after a life estate, and interest is limited to individuals, or to a class, provided they survive the life tenant."

As we have indicated, under the language of the will the wife would not have an interest in the corpus of the 360 shares unless she was living at the time of the death of Caroline. Therefore, her interest constituted a contingent remainder.

It is to be noted that the widow by her renunciation relinquished her interest on 10 shares, and she relinquished the remainder in the 370 shares and the 360 shares in the event she survived Caroline. Section 79 of the Administration Act [Ill. Rev. Stat. 1939, ch. 3, sec. 80; Jones Ill. Stats. Ann. 110.080] provides that the remainder relinquished by the widow's renunciation is not destroyed nor should be accelerated but would be preserved for the benefit of disappointed legatees. In *Wakefield v. Wakefield*, 256 Ill. 296, the court said that where a widow renounced the will and thereby relinquished property given to her by the will, "the court will take hold of that which is relinquished, to compensate, as far as may be, the disappointed devisees." In *Schaffenacker v. Beil*, 320 Ill. 31, the widow was left by her husband's will a life estate in certain property. Thereafter, she renounced the will. Claim was made that her renunciation destroyed the life estate and accelerated the remainder, and the court said: "The renunciation by the widow of the life estate devised to

her did not destroy the life estate or any part thereof, but under section 79 of the Administration act the legacies and bequests are to be equalized, and the life estate not taken by the widow passes by the will." and further the court said in that case: "The rule is general and well recognized that in the case of a contingent remainder, where it is dubious and uncertain as to what persons will be entitled to take the remainder there can be no acceleration or vesting of the remainder by a renunciation of the particular estate by which the remainder is supported. . . . The renunciation by the widow of the life estate devised to her did not destroy the life estate or any part thereof, but under section 79 of the Administration act the legacies and bequests are to be equalized, and the life estate not taken by the widow passes by the will."

As we have already stated, the interest given to the widow, that was relinquished by her renunciation, was not obliterated and destroyed nor were the remainders accelerated, but the interest relinquished should be sequestered by the court and applied to compensate disappointed legatees.

We believe under the circumstances and facts as they appear in this record that the will of the deceased should be construed and as we have indicated, that under the will, even though the provision made for the widow was relinquished by her, still the interest should be conveyed and transferred to the descendants, if she has any, and if she has no descendants, then to her heirs, upon her death.

There is, however, a question that is contended for by the plaintiffs that the construction of the will as we have applied to the words thereof, would violate the rule against perpetuities. However, the rule is that the vesting of a legacy may be postponed, without violating the rule, for any number of lives in being and 21 years thereafter. *Howe v. Hodge,* 152 Ill. 252; *Anderson v. Williams,* 262 Ill. 308. Applying the rule, the

vesting of the shares of the Copper company in question could be postponed until the survivor of the widow, the mother and the sister died and for 21 years thereafter.

There are other questions, but we believe that we have passed upon the questions involved in this litigation, and we believe that what we have said in a measure will pass upon those questions that have been called to our attention.

In plaintiffs' cross appeal, they contend that the defendant Schofield caused the Copper company to fix his salary at $10,000 per year, as president and manager of the company; that the law firm in which appellant was a partner received a fee of $500 for foreclosing a mortgage belonging to the Copper company; that Mr. Kraft, a law partner of defendant Schofield was allowed and received $1,500 as attorney for the executor; that Schofield and Wood received a fee of $1,125 for representing the decedent in his lifetime and the executor thereafter in prosecuting a claim for insurance. It is claimed by plaintiff that the trial court erred in not ordering the defendant Schofield to account for all of the above money. It is to be noted that all of the above items had been received by the defendant Schofield prior to the time the plaintiffs filed their suit in this case.

In reply to plaintiffs' cross appeal, the defendant's theory as to why defendant Schofield should not be required to account for any of the above items, is as follows: First, that there is no averment in plaintiffs' complaint that the salary of $10,000 paid to defendant Schofield was excessive, illegal or improper; that the salary was paid by the Copper company, and that the Copper company is not made a party to the complaint and it is elementary that no recovery could be had for alleged excessive and unreasonable salary paid by a corporation, unless the corporation is made a party to the suit and unless the complaint alleges that the salary paid is excessive or unreasonable, or alleges facts tend-

ing to show the salary paid is illegal and unauthorized; and second, that there is no averment in plaintiffs' complaint that the law firm of Schofield and Wood was paid the $1,125 as attorneys' fees for prosecuting an insurance claim of the decedent; that no claim is made in the complaint that Mr. Kraft, a law associate of defendant Schofield, was paid the sum of $500 on account of attorney's fees for representing defendant Schofield as executor in the probate court; that there is no averment in the complaint that Mr. Kraft was paid a fee of $500 for foreclosing a mortgage belonging to the Copper company; nor is there an averment that the fees paid to defendant Schofield for prosecuting a claim against an insurance company, the fee paid to Mr. Kraft as attorney for Schofield as executor, or the fee paid to Mr. Kraft for foreclosing the mortgage was excessive or unreasonable.

The defendant suggests, however, that the evidence will show that the salaries and fees were fair and reasonable, that the master so found and the trial court so approved.

Again, plaintiffs complain that the defendant Schofield burdened the trust estate with unnecessary expenses in costly and protracted litigation in his effort to justify his actions. Defendant quotes from the record of the testimony before the master where Mr. George, counsel for plaintiffs, said ''There is no allegation made in the Complaint anywhere of any impropriety of the Trustee.'' Therefore, defendant contends, that plaintiffs cannot seek to recover salaries and fees withdrawn by the trustee in a complaint that nowhere alleges ''any impropriety of the Trustee.''

It might be well to consider the provisions of the will upon the questions that are in controversy, which will provides: ''My said trustee may continue the operation and conduct of the business controlled by me and now being conducted under the name of Sueske Brass

& Copper Co. for such period of time as in his discretion he may determine." and further provides:

"Should my said trustee elect to continue the operation of the business of the Sueske Brass & Copper Co., it is my desire that he retain the service of all of its present employees who may be in the employ of said company at the time of my decease." and further: "Should my trustee deem it expedient and for the best interest of my estate to wind up the business of the Sueske Brass & Copper Co., then it is my wish and desire that he use his best efforts to dispose of the same as a going and operating business."

This would indicate that the testator in his lifetime had confidence in the defendant Schofield and that he was competent and able to conduct the business if testator should die and for that reason he considered the provisions which we have quoted as being for the best interests of the beneficiaries.

One other claim that seems to have been pressed is that Caroline Sueske testified that Schofield was paid by checks, $20,000, for organizing the company. Mr. Schofield testified that he was not paid $20,000 for organizing the Sueske Brass & Copper Company, that Schofield represented Mr. Sueske in settling a controversy with reference to the interest of Sueske in the Interstate Brass & Copper Company and in liquidating that company, that his fees in that matter were agreed upon at $9,000 to be payable only out of the assets acquired by Sueske from the Interstate Brass & Copper Company, that he collected this money and had received no other money for the Copper company. Counsel for plaintiffs did not produce any checks showing the payment of $20,000 or any other sum to the defendant Schofield.

There was also a question presented to the court regarding the reference to the master to take the testimony of the respective parties and to report his con-

clusions of law and fact, plaintiffs contending that the master's fees were incurred by reason of the action of defendant's counsel. It does not appear that counsel for Schofield was responsible for referring the cause to the master which seemed from the record that the reference was suggested and made by the court, sustaining the contention of the defendant Schofield's counsel that he had the right to show all the work done and all the beneficial results achieved by the services for which he had been paid from the Copper company and from the trust estate. The court seemed to have considered the questions that were involved and approved the report in so far as it passed upon the question of the allowances that were in question.

In passing upon the claim that Schofield was drawing an excessive salary, while he was president of the Copper company, it appears that while he was president, the company paid dividends in cash, $10.40 a share per annum, $52 a share during the past five years, or $68,000 in cash. It appears also from the evidence that while Mr. Sueske was managing the business it suffered a loss of $24,824.84 in 1928, $15,365.56 in 1932 and $228.12 in 1933; that in 1934, after paying Schofield's salary and all expenses, there remained a profit to the corporation of $10,277.73. In 1935, after making extraordinary expenditures in the way of permanent improvements, there was a net profit of $14,203.32. In 1934, there was an increase in volume of business of 58 per cent in 1935, 42 per cent, and 1936, 87½ per cent. There was evidence in the record as to the usual and customary fee for the services performed by Schofield, and the master found that the compensation received by Mr. Schofield was fair and reasonable and that there is no basis for ordering him to account for any of the salary he has received. The court approved the report on the question of fees and said:

"I am of the opinion that they (the plaintiffs) are not entitled to an accounting for this money. . . .

in this case he so managed the property that it made money and no criticism can be made of his management. True, he charged for, but what he charged, the fees that were charged were not unreasonable. . . . The Master found that the trustee was entitled to the moneys, and I sustain the Master as to that.''

As to the attorney's fees allowed to the defendant Schofield, the petition for fees was heard in open court and evidence presented by both parties as to whether the services were necessary and as to whether the fees were reasonable or excessive. The trial court having approved the allowance of fees and approved the master's report as to fees, we do not believe that plaintiffs are entitled to any relief on their cross appeal.

For the reasons stated in the opinion the decree is affirmed except as to the provisions of the decree which are contained in paragraph (2) that the title to the corpus of the 370 shares and the 360 shares of the stock of the Copper company, the income of which was bequeathed to the mother and sister for life, under paragraph (f) and (g) of said will vested in the mother and sister as of the time of the widow's renunciation of the will; and except as to paragraph (3) of the decree, that the title to the corpus of the 10 shares of the stock of the Copper company, that remained after the widow had taken 740 shares of the 750 shares, the income of which was bequeathed to the widow by will passed under paragraph fifth (h) of the will to the mother and sister in equal shares; and except as to paragraph (4) of the decree, that the trust created by the will of the decedent should be immediately terminated and dissolved.

For the reasons stated the cause is reversed and remanded with directions to the court to enter a decree in conformity with the views of this court expressed in the opinion.

*Affirmed in part and reversed in part and remanded to the trial court.*

DENIS E. SULLIVAN, P. J., and BURKE, J., concur.