30 So.2d 706

## RAMAGE et al. v. FIRST FARMERS & MERCHANTS NAT. BANK OF TROY et al.

### 4 Div. 448.

Supreme Court of Alabama.

May 29, 1947.

E. C. Orme, of Troy, for appellants.

C. L. Rowe, of Elba, for appellees.

STAKELY, Justice.

This case involves a testamentary trust. The questions for decision are (1) whether the trust is for the purpose of accumulation only within the meaning of § 146, Title 47, Code of 1940 and (2) whether the trust should be terminated by the court on the agreement of the beneficiaries specifically named in the will before the expiration of the period prescribed for the trust by its creator.

On July 21, 1938, J. T. Ramage executed his last will and testament. Shortly thereafter he died and the will was duly admitted to probate in the Probate Court of Pike County on August 30, 1938. He left surviving him his widow, a daughter-in-law and four grandchildren. His widow, Mrs. Hattie L. Ramage, was 60 years of age at the time of his death. His son, J. T. Ramage, Jr., predeceased him, leaving a widow, Mary Ramage, a son James T. Ramage, who is now married, but has no children and a daughter Patsy Ann Ramage, who is a minor. The daughter of testator, Mrs. Fox Johnston, Jr., also predeceased testator, leaving her husband Fox Johnston, Jr., and two daughters Mary Louise Johnston, unmarried, and Margaret Johnston Regentine, who is married and has a daughter Jody Regentine, a minor one year old.

D. R. Marley and A. N. Hildreth, who were named as executors and trustees in the will, served as such until March 28, 1946, when their resignation was accepted by the Circuit Court of Pike County, in Equity, to which administration of the estate had been removed. Upon a final settlement of their accounts, The First Farmers and Merchants National Bank of Troy, a corporation, was appointed trustee under the will by the court. Such trusteeship is now pending.

At the time of his death the testator was actively and extensively engaged in farming, raising livestock and banking. He was the President and largest stockholder of The First National Bank of Brundidge. For tax purposes his estate was valued at $238,000. The present undistributed assets of the estate in the hands of the trustee are valued at $175,000 to $185,000.

In the second paragraph of his will the testator devised and bequeathed to his widow, Hattie L. Ramage, 371 shares of the capital stock of The Brundidge Banking Company to belong to her absolutely and for her natural life he left her the residence and a large amount of lands.

In the third and fourth paragraphs of the will the testator devised separately to his two Johnston granddaughters (both then minors) parts of the remainder interests in the lands he had left to his widow for her life. He also devised to them, separately, estates for their respective lives in large tracts of land, with remainder after the termination of the life estate to their respective lineal descendants, if any, with gift over to grandchildren therein named in the event of death without lineal descendants. There is proof tending to show that neither is getting any income at the present time from the bequests to them. Mary Louise Johnston has no other resources except a job which pays her $200 per month. Margaret Johnston Regentine owns no other property and her husband's salary is about $225 a month.

In the fifth paragraph the testator devised a life estate in 480 acres of land to his grandson, James T. Ramage, Jr., with like disposition as to the remainder interest after termination of the life estate. James T. Ramage, Jr., is married but has no children and there is proof tending to show that other than the life estate in the foregoing acreage he has no resources except a salary from The First National Bank of Brundidge of $60 a month.

In the sixth paragraph the testator devised to his granddaughter Patsy Ann Ramage a life estate in 534 acres of land with like disposition as to the remainder interest after the termination of the life

estate. And in the ninth paragraph Patsy Ann Ramage was bequeathed $3,787, payable in installments in accordance with provision made for the other grandchildren through life insurance on the life of testator.

In the tenth paragraph testator created an annuity for life of $150 per month payable monthly to Mary Ramage, the widow of his deceased son.

In the eleventh paragraph testator created an annuity for life of not exceeding $500 per month (the exact amount to be determined by his executors) payable monthly to his widow, Hattie L. Ramage. The executors were authorized and directed to set aside one-fifth of the portion of the estate not otherwise distributed by the will, in trust, the income therefrom and the corpus, if necessary, to pay the annuity to his widow.

In the twelfth paragraph testator provided for payment out of his estate, not otherwise disposed of, of the premiums on a policy for $10,000 on the life of Fox Johnston, Jr. The beneficiaries named in the policy are Mary Louise Johnston and Margaret Ramage Johnston.

In the thirteenth paragraph the testator provided final disposition of his estate as follows:

"On the death of the first of anyone of my said grandchildren, to-wit: Mary Louise Johnston, Margaret Ramage Johnston, James T. Ramage, Jr., and Patsy Ann Ramage, my said executors shall pay or deliver to the lineal descendants of such grandchild, or if there are no such lineal descendants then living, then to the remaining of such grandchildren, share and share alike, per stirpes, a one-fourth part of my said estate then remaining and not herein otherwise disposed of.

"On the subsequent death of a second of my said grandchildren, then the said executors shall pay or deliver to the lineal descendants of such grandchild, or if there are no such lineal descendants then living, then to the remaining such grandchildren, share and share alike, per stirpes, a one-third part of my said estate then remaining and not therein otherwise disposed of.

"On the subsequent death of a third of my said grandchildren, the said executors shall pay or deliver to the lineal descendants of such grandchild share and share alike, per stirpes, a one-half part, and to the remaining grandchild, a one-half part, of said estate then remaining and not herein otherwise disposed of; or if such third grandchild leaves no lineal descendants surviving, then, and in that event, the whole of said estate then remaining shall be so paid or delivered to the remaining grandchild then living. After each such division the title to the property so paid or delivered shall vest in the respective recipients, their heirs or assigns forever."

In the fifteenth paragraph the testator provided that his executors should take possession of the lands devised to his grandchildren during minority and pay to each grandchild during minority, for "support and maintenance a reasonable rental for such lands * * * in such sums and amounts as * * * said executors may deem to their best interest." The proof shows that Patsy Ann Ramage, a minor, is being paid $125 a month as rental of the lands devised to her.

In addition to what has been heretofore noted, the proof tended to show that after payment of annuities, other expenditures authorized by the will and costs and charges of administration there would be left about $2,500 of income each year to be added to the corpus of the trust. The proof further tended to show that all the parties were in good health. The dates of the births of the parties were respectively shown and their ages at the time of the trial in 1946 were respectively as follows: Mrs. Hattie L. Ramage 69 years of age; Mary D. Ramage 46 years of age; Mary Louise Johnston 26 years of age; Margaret Johnston Regentine 25 years of age; Jody Regentine about 1 year of age; James T. Ramage 24 years of age; Patsy Ann Ramage 13 years of age. The American Experience Table of Mortality was introduced in evidence.

All the legatees and devisees continued to accept the benefits under the will until May 6, 1946. At this time they undertook to enter into a contract to terminate the trust set up by the will and to provide for

a division of all undistributed assets of the estate (not taking into consideration lands specifically devised in the will and reserving the homestead to testator's widow for her lifetime).

Hattie L. Ramage, the widow of testator, Mary Ramage, the daughter-in-law of testator and the three grandchildren of testator, who are now adults, James T. Ramage, Mary Louise Johnston and Margaret Johnston Regentine all executed the contract. The contract was also executed by Mary D. Ramage, as Guardian of Patsy Ann Ramage, a minor, under court order.

Thereafter the present bill of complaint was filed by Hattie L. Ramage, Mary Ramage, James T. Ramage, Mary Louise Johnston, Margaret Johnston Regentine and James T. Ramage, as next friend of Patsy Ann Ramage (appellants) against First Farmers and Merchants National Bank of Troy, a corporation and Jody Regentine, a minor (appellees), to terminate the trust. Permission is sought to divide the trust estate according to the contract, hereinabove referred to, and the provisions of which will be hereinafter discussed.

The cause was submitted for decree upon the original bill of complaint, the exhibits attached thereto, which were copies of the will and the contract, the answer of the guardian ad litem of Jody Regentine, the answer of the trustee, The First Farmers and Merchants National Bank of Troy and testimony on behalf of the complainants.

The English act commonly known as the Thellusson Act was the first statutory restriction upon trusts for accumulation. This enactment was the result of litigation over the will of Peter Thellusson. Under the common-law trusts for accumulation are limited only by the rule against perpetuities. 41 Am.Jur. p. 89. In the Code of Alabama of 1852, §§ 1309 and 1310 respectively declared by statute for the first time in Alabama the rule against perpetuities as to lands and the restriction against trust estates for the purpose of accumulation only.

■ The common-law rule against perpetuities as to land is now effective in this state so that the rule against perpetuities applicable to personal property and to land is the same. § 16, Title 47, Code of 1940. That rule is that "no interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." Gray on Perpetuities, 4th Ed., p. 191, § 201; Crawford v. Carlisle, 206 Ala. 379, 89 So. 565. To this, according to the common law, must be added, in case of an infant in ventre sa mere, sufficient time to cover the ordinary period of gestation. Lyons, et al. v. Bradley, 168 Ala. 505, 53 So. 244; Henderson et al. v. Henderson et al., 210 Ala. 73, 97 So. 353.

The statute in Alabama which places a restriction upon trusts for accumulation only is § 146, Title 47, Code of 1940, which is in the exact language as it appeared in the Code of 1852 and which is as follows: "No trust of estate for the purpose of accumulation only can have any force or effect for a longer term than ten years, unless when for the benefit of a minor in being at the date of conveyance, or if by will, at the death of the testator; in which case the trust may extend to the termination of such minority."

■ This brief historical statement has been made to show that while the rule against perpetuities and the restriction on trusts for accumulation only are separate rules, they do have a certain association in that if a trust for accumulation of income violates the rule against perpetuities in dealing with the principal or corpus, then the trust is void. 48 C. J. p. 989. So while the attack upon the trust in the case at bar is directly made under the provisions of § 146, Title 47, Code of 1940, it seems to us that we should first consider the trust in the light of the rule as to perpetuities.

■ We think it plain that under the provisions of the thirteenth paragraph the testator adopted the plan of lives in being for the final disposition of his estate. The lives were the lives of his four grandchildren, all living when he died and all specifically named in the will. There is no need to consider the additional period of 21 years. The entire estate must vest not later

than during the life of the grandchild who survives the death of the other three of the grandchildren. There is no violation of the rule against perpetuities. Accordingly we pass to a consideration of the restriction against accumulation only.

A number of states have adopted statutes more or less similar to the English Thellusson Act in order to impose restrictions on the power to provide for accumulations. It has been pointed out that various social and economic evils would result if the law allowed long continued accumulations of wealth. Gertman v. Burdick, 75 U.S.App.D.C. 48, 123 F.2d 924, 152 A.L.R. 645; Webb v. Webb, 340 Ill. 407, 172 N.E. 730, 71 A.L.R. p. 404; 41 Am.Jur. pp. 90, 91.

The Alabama act limits trusts for "accumulation only" to 10 years, with exception not here applicable, except as to the minor Patsy Ann Ramage. Thurlow v. Berry, 247 Ala. 631, 25 So.2d 726. Under the Alabama statute, if a trust is not for "accumulation only" the period of the common-law rule against perpetuities still applies. So if the trust is not for "accumulation only" and if the interest vests within the period required by the common law against perpetuities the trust is valid. Henderson v. Henderson, supra.

Accordingly it becomes necessary to consider what is a trust for "accumulation only". Accumulation means the addition of the interest or income from a fund to the principal or corpus so as to prevent expenditure of the interest or income. Henderson v. Henderson, supra; 41 Am.Jur. p. 92. But if the trust provides for periodic distribution of the income to the objects of the testator's bounty, to which may be added expenditures within the discretion of the personal representative or trustee for purposes of preserving the trust properties, this power renders the trust not for accumulation only within the meaning of the statute. Henderson v. Henderson, supra. And "the fact that in its due administration the whole income from the trust fund may not be expended or distributed, and, to such extent, is an incidental accumulation during the course of the administration, does not destroy the ordinary character of the trust and

make of it a trust for 'accumulation merely' or 'accumulation only,' as is the subject of section 3410 of the Code of 1907"—now § 146, Title 47, Code of 1940. Henderson v. Henderson, supra [210 Ala. 73, 97 So. 362].

Furthermore this court in Thurlow v. Berry, 247 Ala. 631, 635, 25 So.2d 726, 730, said: "* * * In construing a will to determine whether accumulation merely is provided, the court gives a constructional preference in favor of a finding that income is 'undisposed of' rather than to be 'accumulated'; in favor of 'finding that retention of income is in the course of judicious management of the trust, rather than an accumulation.' * * * "

See also Watters v. First National Bank of Mobile, 233 Ala. 227, 171 So. 280.

There is nothing in the will of J. T. Ramage which directs the executors or trustees to add the income to the corpus. Yet though there is no specific direction for accumulation, where "accumulation only" necessarily results in executing the provisions of the will, such accumulation is as much within the act as where the accumulation is expressly directed if such accumulation was the purpose of the trust. In re Billings' Estate, 268 Pa. 71, 110 A. 768; Campbell, Guardian, etc. v. Weakley, Adm'r., 121 Ala. 64, 25 So. 694.

The will provides for payments to maintain certain insurance policies. It provides for a monthly payment of $150 to Mrs. Mary Ramage. It provides for a monthly payment of not exceeding $500 to Mrs. Hattie L. Ramage. It is true that the will directs that one-fifth of the estate remaining and not otherwise disposed of be set aside during the life of Mrs. Hattie L. Ramage for the purpose of providing for these particular payments to her, with direction to use the income and profits first and then the corpus if necessary. But this is no reason why the direction to make these payments to Mrs. Hattie L. Ramage cannot be considered along with the direction to make other payments in determining whether the purpose of the trust is accumulation only, since these payments must come out of the trust estate and go to an object of the testator's bounty.

Under the provisions of the fifteenth paragraph of the will $125 a month is being paid to Patsy Ann Ramage and presumably payments will continue to her under this paragraph during her minority.

It is argued that despite the foregoing payments and the expenses of administration and upkeep, the estate has an undistributed income each year of about $2,500 to say nothing of interest to be derived from investment of that amount. Further it is contended that according to the American Experience Table of Mortality, a time will probably come when such undistributed income will materially increase through the deaths of Mrs. Hattie L. Ramage and Mrs. Mary Ramage, while the four grandchildren are still alive with substantial life expectancies and as far as Patsy Ann Ramage is concerned also after she has reached her majority. It is pointed out that during this period, if it occurs, there can be no substantial distribution of income.

 Section 146, Title 47, Code of 1940, is not a rule of construction but a positive statutory mandate given for the purpose of defeating intention. Gray on Perpetuities, 4th Ed., p. 648. The will here involved must therefore be construed as though this statute did not exist and then the rule of the statute applied. Ashurst v. Ashurst, 181 Ala. 401, 61 So. 942; 48 C.J. § 89, p. 997. And the purpose or intention of J. T. Ramage in providing for the trust in his will must be determined as of the time when the will takes effect. In re Billings' Estate, supra; 48 C.J. p. 992.

 The 10 year period set up in the statute begins to run from the testator's death. Gray on Perpetuities (4th Ed.) p. 649. See Crawford v. Carlisle, 206 Ala. 379, 89 So. 565. J. T. Ramage died in 1938. At the present time the statutory period has not expired. Not only is the trust estate still within the period in which "accumulation only" is allowable, but in view of the periodic expenditures provided for under the terms of the will, we regard the present undistributed income as incidental accumulation and not in violation of the statute. Authorities supra.

 But what about the future? Counsel in brief estimate the life expect-ancies of the parties as shown by the American Experience Table of Mortality, such estimate being made as of the time of the trial in 1946. Nothing is conclusively shown by the mortality table. L. & N. R. R. Co. v. Holland, 173 Ala. 675, 55 So. 1001. As pointed out the intention which controls in arriving at the purpose of the trust is the intention of the testator as of the time of his death. That was in 1938 and all of the parties were about eight years younger then than at the trial. All of the grandchildren and the two annuitants are still alive, but from the standpoint of the testator in 1938, the prospective life of these respective parties was uncertain and will continue uncertain in the future. It was possible and still is possible that one or both of the annuitants will survive one, if not all of the grandchildren. Besides business and economic factors are uncertain and from the testator's standpoint could materially change. Henderson v. Henderson, supra. In view of these uncertainties and the direction to make the expenditures, other than to the annuitants, hereinabove referred to, we are not willing to say that the trust was created for "the purpose of accumulation only". The constructional preference should be in favor of validity rather than invalidity. Thurlow v. Berry, supra. There was no violation of § 146, Title 47, Code of 1940.

But the appellants further earnestly contend that since all the beneficiaries specifically named in the will, were parties to the contract to terminate the trust, all interests of every kind and description were represented. Accordingly the position is taken in effect that the contract is nothing more or less than an agreement among the owners of all interests to terminate the trust created by the will and the agreement should be upheld by the court.

Evidently on the theory that Patsy Ann Ramage is a minor and that termination of the trust will not ordinarily be decreed, where one of the cestuis is a minor (See 54 Am.Jur. p. 80), application was made to the equity court by her guardian to approve the contract so far as the interest of the minor was concerned. The application was approved. From the decree in the present case it seems to appear that this

was done in order that she might join in the present case to try out the right vel non to terminate the trust.

▮ By the fourteenth paragraph of the will the legal title to the undistributed portion of the testator's estate was vested in the executors or the trustee to be held in trust to carry out the directions of the thirteenth paragraph. The plan of the trust is that such undistributed portion should remain undistributed until the death of the first of the four grandchildren to die. No one of the four grandchildren has any specified interest in the corpus or the incidental accumulation until the happening of that event. As to the four grandchildren, the interest of each is contingent upon he or she not being the first grandchild to die. Not until that first death is there a possibility that any interest in the undistributed corpus and incidental accumulation will vest absolutely.

Jody Regentine, the infant child of Margaret Johnston Regentine, named in the thirteenth paragraph of the will, is a contingent beneficiary under said paragraph. In the event of the death of her mother, Mrs. Margaret Johnston Regentine, without further lineal heirs, prior to the death of either of the other three grandchildren named in the will, the infant Jody Regentine, if then living, would be vested absolutely of one-fourth of the undistributed trust estate. And upon the death of each of the other named grandchildren without lineal descendants, Jody Regentine would be vested with additional moieties of such undistributed trust estate. The contract to terminate the trust took no notice of Jody Regentine. Any unborn child of any of testator's aforenamed grandchildren, upon coming into being would become a contingent beneficiary and would perhaps occupy the same status that the infant Jody Regentine now occupies.

Under the formula provided in the contract to terminate the trust, the annuitants, Mrs. Mary Ramage and Mrs. Hattie L. Ramage, will each convey their respective rights and benefits under paragraphs 10 and 11 of the will to the four named grandchildren, each to receive as a consideration therefor one-sixth of the net assets of the estate remaining in the hands of the trustee at the time of termination. The contract contemplates full distribution of the assets of the estate to the parties to the contract upon termination of the trust. It is claimed that the termination of the trust as provided for in the contract is for the best interest of all concerned since the net value of the assets of the estate is diminishing, that cost of administration will continue to deplete the estate and according to the mortality table, there may be a considerable period after the deaths of the annuitants when the four grandchildren will receive no income from the estate. And further that the object of the trust has been practically accomplished.

In view of what we have pointed out, it does not seem to us to follow that termination of the trust will be so advantageous as to warrant us in divesting Jody Regentine of her contingent interest and divesting the contingent interest of children that may be born to any of the four grandchildren.

We are not certain as to the position of Patsy Ann Ramage because we are not sure as to the effect of the decree under which her guardian signed the contract of termination. That decree is not a part of the record before us. It is not amiss to point out, however, that she is the youngest of the four grandchildren by a substantial margin and she or her lineal descendants, if she has any, may ultimately take in fee simple not only one-fourth but perhaps additional moieties of the undistributed estate.

▮ While we have tried to make it clear that we are not satisfied that termination will be to the advantage of Jody Regentine, a minor, and ordinarily her minority alone would suffice for the court to refuse termination of the trust (34 Am. Jur. p. 80; 2 Perry on Trusts, § 920, p. 1560; Anderson v. Williams, 262 Ill. 308, 104 N.E. 659, Ann.Cas.1915B, 720), we think the matter involves another serious question. It is plain that the plan of termination runs counter to the objects of the trust as shown by its provisions. It is sufficient to call attention to the fact that the grandchildren, although they signed the contract of termination, at the present time have no vested interest in the trust estate. One of the objects of the trust is the pres-

ervation of the title for the benefit of a group whose personnel is subject to future change. See Street v. Pitts et al., 238 Ala. 531, 192 So. 258.

When the courts are asked to terminate a trust they will ordinarily not defeat any lawful object of the trust as shown by its provisions. All those who will ultimately be entitled to the corpus of the estate cannot now be determined. Certainly in this case the court must decline to terminate the trust when termination will not only defeat the object of the testator but where in doing so, contingent interests will be cut off. 54 Am.Jur. p. 80; Hills v. Travelers Bank & Trust Co., 125 Conn. 640, 7 A.2d 652, 123 A.L.R. 1419, 1444; Rowley v. American Trust Co., 144 Va. 375, 132 S.E. 347, 45 A.L.R. 738 and note; 69 C.J. p. 808; 2 Perry on Trusts, 920, p. 1560; 4 Bogert on Trusts and Trustees, § 1002, p. 2931; Anderson v. Williams, supra.

Under the circumstances there is no need to see if unborn contingent remaindermen are adequately represented before the court. See Ussery et al. v. Darrow, 238 Ala. 67, 188 So. 885.

We conclude that the court was correct in decreeing that the trust created under the will of J. T. Ramage, deceased, is valid and that complainants were not entitled to terminate the trust.

Affirmed.

GARDNER, C. J., and FOSTER and LAWSON, JJ., concur.