The issue on this appeal is whether the evidence was sufficient to permit the trial court to find that a corporate officer-director did not breach fiduciary duties owed the corporation and did not realize personal profit or gain in dealing with corporate assets. We find no error in the trial court's conclusion that he did not, and affirm the judgment.
Basically, this case involves three transactions in which Jefferson County Truck Growers Association, a Corporation, leased property to others who, in turn, subleased, and assigned an interest in their leases, to one Jack R. Tanner.
The Association is an Alabama corporation, managed by a nine member Board of Directors from which it elects a President who presides over board meetings who only votes in the event of a tie. In July 1956, the Association was in possession and control of, with the right to lease, the properties referred to in this litigation. On 2 June 1956, Tanner became a member of the Board of Directors of the Association, was elected its President, and served until 1972. In addition, from June 1957, he served as temporary market manager.
The Association has, for many years, operated the Farmers Market in Birmingham on premises where Southern Railway Company formerly operated its Finley Avenue yards. It brought this action in May 1974 against Jack R. Tanner and others but, *Page 487 
during trial, dismissed as to all except Tanner. The action, by a three count complaint, sought an accounting from, and judgment against, Tanner, of profits allegedly accruing to him from the breach of fiduciary duties owing the Association from June 1956, to June 1972, during which time he allegedly handled, on behalf of the corporation, leases of three parcels of its property and had a personal participation in those leases.
Tanner denied the breach of any fiduciary duties, claimed his personal participation in the three leases was known to the Board of Directors, and it either expressly approved, or made no objection; he also defended on the basis of laches and the statute of limitations.
The case was heard ore tenus, judgment adverse to the Association entered, and this appeal taken.
The principle that governs this case is: an officer-director of a corporation owes a duty of managing the corporate affairs honestly and impartially and he may not achieve personal advantage, profit, or gain from his position.
 I
The transaction complained of in count one, of the three count complaint, relates to a parcel of property on which a structure known as the Retail Building is located. In 1960, the Association leased it to one Schmell for a monthly rent of $500. The lease, additional options about renewals, and other considerations about this transaction were discussed at two separate meetings of the Board of Directors. Tanner, its President and member of the Board, executed the lease in behalf of the Association. Schmell spent between $70,000 and $80,000 renovating the building for use as a food store; later he subleased it to Eagle Food Stores, Inc., at a rental price of $1,000 a month. Tanner was not aware of the sublease to Eagle, had no interest in the sublease at the time, and did not discuss with Schmell the latter's requests of the Association for additional options. Neither did he attempt to persuade the members of the Board to vote in favor of Schmell's requests.
During January 1961, in consideration of Tanner's investment, over the years, of about $70,000 in other business ventures of Schmell, he transferred to Tanner a half interest of the sublease to Eagle. Thereafter, Tanner received sums of Eagle's rental payments ranging from $250 to $350 monthly, until 1976, allegedly totaling $60,100. The Board of Directors was aware of his interest in this transaction from the time he acquired it and never made objection.
(A) As to each count we must determine whether, under the evidence, the trial judge was authorized to find there was no conflict between Tanner's interests in the subleases and his obligations to the Association in his capacity as President or Director. There are permissible conclusions common to all three counts which can be drawn: the leases from the corporation to Herman Schmell and to the Smoke House, Inc., were valid, duly approved in meetings of the Board of Directors where Tanner's presence was not necessary to constitute a quorum, and his vote not necessary to authorize them; Tanner had some sort of interest in each transaction, either in Schmell's subleases or as a direct participant in the Smoke House, Inc., which was known to and approved by the Association.
1. As to count one, there is evidence that Tanner did not use his position as President to influence or persuade the Association in arriving at the terms of its agreements with Schmell regarding the lease and its attendant options; that members of the Board of Directors were aware of Tanner's interest in the sublease from Schmell to Eagle Food Stores and never made objection to his interest.
The trial court found the claim was barred by the one-year statute of limitation found in Tit. 7, § 42 of the Code. The statute is applicable to actions based on fraud. However, a corporate director is a quasi trustee, and as long as the fiduciary relationship between him and the corporation *Page 488 
exists, the statute of limitations will not run against a claim based on his wrongdoing. This principle has been applied in cases based on self-dealing where the director himself was responsible for the concealment of facts upon which a claim could be based and where knowledge of those facts were solely within the director's control. Greenleaf v. Profile CottonMills, 235 Ala. 530, 180 So. 582 (1938); Coxe v. Huntsville GasLight Co., 106 Ala. 373, 17 So. 626 (1895). Plaintiff's claim was filed in 1974. But, based on the evidence, the trial court found the plaintiff-corporation had knowledge of Tanner's interest in the Eagle Food Stores sublease in 1961 and such knowledge was sufficient to provoke inquiry in reasonable minds which would have led to the facts on which the claim is based. Fraud is deemed to have been discovered when it ought to have been discovered. It is sufficient to begin the running of the statute of limitations that facts were known which would put a reasonable mind on notice that facts to support a claim of fraud might be discovered upon inquiry. Johnson v. ShenandoahLife Insurance Co., 291 Ala. 389, 281 So.2d 636 (1973). There was sufficient evidence from which the trial court could conclude that the limitations period had run.
 II
The transaction which is the basis of the second count concerns a restaurant built on a portion of its premises by the Association. When it sought a tenant to operate the restaurant, one Todd offered to rent and operate it but then became reluctant to conclude an agreement to do so; at that point, one Hollis, a Director of the Association, brought Todd and Tanner together to discuss this venture. Tanner agreed to participate with Todd; to that end a corporation was organized with each taking 50% of the stock and the Board of Directors of the Association authorized a lease to that corporation, Smoke House, Inc., at a monthly rental of $400. Tanner invested $17,000 in the business. At a meeting of the Association's Board of Directors on July 24, 1957, he explained in detail his interest in Smoke House, Inc.; stated if there was any question of conflict of interest in the situation he would resign as President of Truck Growers; further, in the future he would abstain from voting on any matter involving transactions with Smoke House, Inc. Motion was made and unanimously adopted ratifying all contracts and agreements between the Association and Smoke House, Inc.; the Board further stated it had no objection to Tanner's interest in the restaurant and would not raise any question in the future as to a conflict of interest because of it. All Directors were present at this meeting.
Tanner sustained a loss of about $35,000 to $40,000 in the restaurant and a year later, in 1958, withdrew from the business and turned his stock over to Todd. In all further transactions between Todd and the Board concerning the restaurant, Tanner absented himself and did not participate in the discussions. In October 1958, pursuant to a unanimous vote at a meeting of seven of the nine Directors, the rent on the restaurant was reduced from $400 to $200 a month. Beginning in 1962, Smoke House, Inc., began making payments of $200 each, in some months, to Tanner. A total of $22,041.23 was paid to him through April 1974, when the last payment was made. There is evidence this money was partial repayment of monies he had invested in the restaurant and for the stock he had transferred to Todd. This sum the Association contends is due it from Tanner.
The evidence regarding the $200 payments to Tanner concerning the restaurant is the only evidence directly challenged by plaintiff on appeal. One witness, a member of the Board of Directors, testified that he had no knowledge of these payments and that to his knowledge, neither did any of the other Directors. Tanner testified that he had not informed the Board he was receiving the payments. Plaintiff contends the $200 payment was a kickback to Tanner so long as the reduced rent of $200 was being paid Truck Growers.
2. As to count two, there is evidence that Tanner's participation in the restaurant *Page 489 
business was known to and approved by the Association; that Tanner sustained a substantial financial loss in that venture; that he withdrew from the restaurant business, transferred all his stock back to Todd, and had nothing to do with the Association's decisions regarding the reduction of rent on the restaurant. Further, the $200 payments to Tanner were begun four years after he withdrew from the business and appear to be a form of repayment for Tanner's initial investment loss, as testified to by Todd and Tanner, instead of the product of any agreement or activity related to Tanner's position as President of the Association; therefore, not a kickback. The trial court's judgment reflects its conclusion that the $200 payments to Tanner were not kickbacks and the evidence was amply sufficient to authorize the trial court to conclude there was no conflict of interest.
 III
Count three involves a portion of the Farmers Market premises leased by Truck Growers to Schmell, in 1957, on which Schmell constructed a service station. After making improvements to this property Schmell subleased to Arkansas Fuel Oil Corporation. Tanner had no knowledge of the sublease until it was brought before the Board of Directors for approval. It was approved by signature of seven of the Directors, Tanner's signature not appearing. A year later, in 1958, Tanner and Schmell entered into several business ventures together, none of which involved transactions between Schmell and Truck Growers. Tanner advanced Schmell over $20,000 for investment in these ventures. As consideration for these advancements, Schmell transferred one-half interest in the Arkansas Fuel Oil Corporation sublease to Tanner, on October 11, 1958. The monthly rent from the sublease was applied $50 to plaintiff and $250 to the First National Bank of Tuscaloosa on a loan outstanding to Schmell. Tanner has never received any remuneration as a result of this one-half interest in that sublease. Truck Growers claims Tanner received a total of $28,500 from his interest in the sublease and owes that amount to it.
3. There is no evidence regarding count three to indicate Tanner used his position to influence the Association in its lease of the service station property to Schmell, nor was he in any way involved with transactions between Schmell and the Association concerning the Board's approval of the sublease to Arkansas Fuel Oil Corporation. Any interest Tanner had in the sublease was known to the Association for many years before this action was initiated. There was also evidence that Tanner had never actually received money payments as a result of his interest in the sublease.
The trial court also found that plaintiff had knowledge of defendant's interest in the Arkansas Fuel Oil Corporation in 1958 and the claim in count three was barred by the one-year statute of limitations. Tit. 7, § 42 of the Code. For the reasons set out in our discussion of the applicability of the same statute to the claim in count one, we hold the claim in count three also barred.
In his answer, defendant asserted the defense of laches, and the trial court held the claims were so barred. Under the facts of this case the doctrine was not applicable and the trial court correctly concluded the claims in counts one and three were barred by the statute of limitations, therefore, its incorrect application of the doctrine of laches was harmless error.
The trial court also found plaintiff's claim as asserted in count two, involving the Smoke House, Inc., to be barred by the statute of limitations and by laches. Since, as we have determined, there was sufficient evidence to find there was no conflict of interest regarding payments from the Smoke House, therefore no breach of duty, it is not necessary to reach the question of a bar to that claim.
A review of all the evidence shows there was sufficient evidence upon which to base a finding, as to each count, that there was no breach of fiduciary duty, and two of three of plaintiff's claims were barred by the statute of limitations. The trial court's findings as expressed in its final decree are *Page 490 
in accord with the law of Alabama under the principles governing the relationship between a corporation and its directors. Ingalls Iron Works Co. v. Ingalls Foundation,266 Ala. 656, 98 So.2d 30 (1957); Sellers v. Head, 261 Ala. 212,73 So.2d 747 (1954).
The trial judge heard the evidence ore tenus. There was conflicting evidence as to the extent of disclosure of Tanner's interest in the transactions and the trial judge was in the best position to weigh the evidence; every presumption will be indulged in favor of the trial court's findings; such findings were not palpably wrong and will not be disturbed. Lockett v.Coleman, 293 Ala. 613, 308 So.2d 689 (1974).
AFFIRMED.
BLOODWORTH, FAULKNER and ALMON, JJ., and SIMMONS, R.C.J. (Retired Circuit Judge sitting by designation of the Chief Justice), concur.