[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 398 
 ON APPLICATION FOR REHEARING
The original opinion in this case is hereby withdrawn and the following is substituted therefor.
This case involves an action for an accounting and for damages based on the alleged breach of fiduciary duties by the trustee of an alleged irrevocable trust, who also serves as a director of the corporation whose stock composes the corpus of that trust. The trial court found, as a matter of law, that the defendant had created a valid, irrevocable trust in favor of the plaintiff, and entered a summary judgment for the plaintiff on that issue, but reserved the remaining issues for trial. After a trial without a jury, the court entered judgment for the defendant, finding that he had not breached his fiduciary duties to the plaintiff. The plaintiff filed a motion to alter or amend the judgment, which was denied. Both parties appeal.
The record discloses that the plaintiff and the defendant were involved in a personal relationship over a period of about three years, during which time the defendant gave the plaintiff a number of expensive gifts, including real estate and automobiles. The plaintiff alleges that the defendant executed an irrevocable trust for her benefit in order to provide for the maintenance expenses on these gifts. Subsequent to the parties' termination of their relationship in October 1983, the plaintiff made inquiries of the defendant concerning the trust proceeds. The record shows that the defendant refused to respond to these inquiries and that at no time did the plaintiff receive proceeds from the trust. The plaintiff claims that the defendant, as a director of American Flexo Corporation (hereinafter "American Flexo"), deliberately attempted to decrease the corporation's profits in order to devalue the corpus of *Page 399 
the trust, which was comprised solely of American Flexo stock. This alleged conduct is the basis of the plaintiff's claim that the defendant has breached fiduciary duties owed to her.
 Issues Presented
The plaintiff's appeal presents this Court with the following issues: 1) whether the trial court erred in finding that the defendant had not breached fiduciary duties owed the plaintiff; and 2) if so, whether the plaintiff is entitled to the costs of an accounting and the costs of litigation. On cross-appeal, the defendant raises the following issues: whether the trial court abused its discretion in finding, as a matter of law, the existence of an irrevocable trust in favor of the plaintiff; and 2) whether the trial court erred in not finding that the trust was invalid under the rule against perpetuities, or alternatively, was invalid under the accumulation trust statute, Code 1975, § 35-4-252.
 Validity of the Trust
Because the defendant asserts error in regard to the validity of the trust, we begin with the cross-appeal. It is undisputed that the defendant drafted the following two documents, which the plaintiff claims create a trust in her favor, comprised of the defendant's 50 percent stock interest in American Flexo, with the defendant serving as trustee. The first document, dated February 28, 1982, was handwritten by the defendant, and it provided as follows:
 "On 2/27/82 I instructed my attorney, Steven Kay, to set up an Irrevocable Trust for my 50% stock holding in American Flexo in the name of Eve Ellis Jones, with me as trustee.
 "Even though formal documentation will follow I consider it effective as of this date.
"/s/ William H. Ellis, 2/28/82."
The second document, dated August 31, 1982, was typed and notarized, and it further provided as follows:
 "On February 27, 1982, I instructed my attorney, Steven Kay, to set up an Irrevocable Trust for 50% stock holding in American Flexo in the name of Eve Ellis Jones, with me retaining the right to vote the stock until the time of my death, at which time this right reverts to Ms. Jones.
 "Even though formal documentation will follow I consider it effective as of this date.
 "/s/ William H. Ellis Aug. 31, 1982 ----------------- ------------- William H. Ellis Date
 "/s/ Judy D. Christian Aug. 31, 1982 ----------------- ------------- Notary Public Date."
The trial court found, as a matter of law, that the second instrument created an irrevocable declaratory trust for the plaintiff. The trial court correctly ruled that a valid trust exists. This Court has held consistently that no particular form of words is required to create a trust, but that any instrument in writing signed by the parties, or party, at the time of the trust's creation, or subsequently, will suffice, if the nature, subject matter, and objects of the trust and manifested with reasonable certainty by the instrument.First Alabama Bank of Tuscaloosa, N.A. v. Webb, 373 So.2d 631,638 (Ala. 1979); Black v. Black, 286 Ala. 233, 238 So.2d 861
(1970); Gordon v. Central Park Little Boys League, 270 Ala. 311, 119 So.2d 23 (1960); and Hodge v. Joy, 207 Ala. 198,92 So. 171 (1921). The two documents alleged to comprise the trust in this case clearly set forth the nature, subject matter, and objects of the trust. Additionally, Ellis's intent that this be an effective and valid trust is shown from the language of the documents, as required under Alabama law. Goodman v. McMillan,258 Ala. 125, 129, 61 So.2d 55, 58 (1952).
On appeal, the defendant raises several issues concerning the validity of the trust instrument. First, the defendant argues that the trust instrument is void because, he says, it was fraudulently induced by the plaintiff's promise to modify her behavior with respect to alcohol and other controlled substances, which, he claims, she never intended to perform. The trial court found, however, that there was no evidence to support the defendant's allegation that *Page 400 
the plaintiff, at the time her promise was made, intended not to perform it. This finding is supported by the record.
This Court recognizes the rule that a promise to do something in the future, made with the intention not to perform, can authorize the rescission of an instrument executed on the basis of that promise. See Popwell v. Greene, 465 So.2d 384, 386
(Ala. 1985). However, that is not the case here. Even assuming that the plaintiff did not subsequently modify her behavior as she had promised, her mere failure to do so does not support a claim of fraudulent inducement. Cf., Popwell. Therefore, we affirm the summary judgment in favor of the plaintiff on this issue.
Ellis also contends that the trust violates the rule against perpetuities and the ten-year limit for accumulation trusts. We find these contentions to be without merit.
This trust is not an accumulation trust within the meaning of Ala. Code 1975, § 35-4-252. Specifically, an accumulation trust is one where the interest or income is added to the principal or corpus so as to prevent expenditure of the interest or income. Tumlin v. Troy Bank Trust Co., 258 Ala. 238, 245,61 So.2d 817 (1950); Ramage v. First Farmers Merchants Nat'lBank of Troy, 249 Ala. 240, 246, 30 So.2d 706 (1947); G. Bogert, The Law of Trusts and Trustees, § 215 (2d ed. 1979). The purpose of the statute prohibiting accumulation for longer than ten years is to prohibit the "building up of great fortunes and the concentration of wealth in the hands of an individual or a family." G. Bogert, supra, p. 247. This is not the case here, since there was no income to be accumulated. "The fact that in its due administration, the whole income from the trust fund may not be expended or distributed, and, to such an extent, is an incidental accumulation during the course of the administration, does not destroy the ordinary character of the trust and make it [an accumulation] trust. . . ." Ramage,supra, at 246, 30 So.2d 706. Further, this Court is to give a constructional preference in favor of finding that the income is "disposed of," rather than "accumulated." Id.
Ellis also contends that the trust is invalid under the rule against perpetuities. That common law rule states that "no interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." Ramage, supra; Henderson v. Troy Bank TrustCo., 250 Ala. 456, 465, 34 So.2d 835 (1948). For the trust to be valid, the interest must vest within 21 years from Ellis's death. This trust will vest at his death; it therefore does not violate the rule.
 Breach of Fiduciary Duties
We now consider the issues presented by the plaintiff's appeal. The plaintiff argues that the trial court erred in finding that the defendant had not breached fiduciary duties owed her and, more specifically, that the trial court erred in its application of the "good business judgment rule" and in failing to also apply the "prudent investor rule" as the appropriate standard of care. We agree.
In the present case, the defendant served both as the trustee of a trust created for the plaintiff and as a director of American Flexo, the corporation whose stock comprised the corpus of the trust. Thus, the defendant served the plaintiff in two distinct legal capacities, each with its own standard of care and duty of loyalty.
With regard to the defendant's role as a director of American Flexo, we start with the proposition that this Court generally will not interfere with the internal business management of a corporation. However, we recognize that this rule does not apply in cases of fraud or maladministration that is destructive or injurious to a corporation. See Scott v. EastAlabama Education Foundation, Inc., 417 So.2d 572, 574 (Ala. 1982); and Cadden v. Ladd, 358 So.2d 437, 439 (Ala. 1978). Furthermore, this Court has recognized that a director is liable for losses to the corporation resulting from his intentional departures from duty, fraudulent breaches of trust, gross negligence, or ultra vires acts. See Deal v. Johnson,362 So.2d 214, 218 (Ala. *Page 401 
1978). Absent such circumstances, however, a director is not liable for losses suffered by the corporation if he has acted in good faith. See id. This is referred to as the "good business judgment rule." See Burke v. Gulf, Mobile Ohio R.R.,324 F. Supp. 1125, 1129 (S.D.Ala. 1971), aff'd, 465 F.2d 1206
(5th Cir. 1972). Furthermore, a director is entitled to a presumption of good faith, but this presumption will be overcome by the presence of factors sufficient to influence him to do otherwise. See Ingalls Iron Works Co. v. IngallsFoundation, 266 Ala. 656, 666, 98 So.2d 30, 39 (1957).
In addition to owing the corporation and its shareholders a duty of care, a director also occupies a position of special trust in regard to the corporation and its shareholders, which imposes upon him a duty of loyalty. In that regard, the court in Belcher v. Birmingham Trust National Bank, 348 F. Supp. 61,82 (N.D.Ala. 1968), recognized:
 "Although not technically trustees, the duties of officers and directors are analogous to those of trustees. They are required to act with fidelity and in good faith, subordinating their personal interests to the interests of the corporation. . . .
 "They occupy a quasi fiduciary relation to the corporation and its stockholders." (Citations omitted; emphasis added, in part.)
This Court, as well, has recognized the fiduciary nature of a director's relationship to the corporation and its shareholders. In Holcomb v. Forsyth, 216 Ala. 486, 113 So. 516
(1927), this Court stated:
 " 'While directors of a corporation may not be in the strict sense trustees, it is well established . . . that they occupy a quasi fiduciary relation to the corporation and its stockholders. The entire management of corporate affairs is committed to their charge, upon the trust and confidence that they shall be cared for and managed within the limits of the powers conferred by law upon the corporation and for the common benefit of the stockholders. They are required to act in the utmost good faith, and in accepting the office they impliedly undertake to give to the enterprise the benefit of their best care and judgment, and to exercise the power conferred solely in the interest of the corporation. Clothed with the power of controlling the property and managing the affairs of the corporation, without let or hindrance, as to third persons, they are its agents, but, as to the corporation itself, equity holds them liable as trustees.' "
Holcomb, 216 Ala. at 490, 113 So. at 519-20 (citations omitted; emphasis added).
We recognize that the role of the director as a fiduciary does not prohibit him from having personal dealings with the corporation, the other directors, or the stockholders; but, rather, the duty imposed on the director in such dealings is defined by and dependent upon the particular facts and circumstances involved in each case. See Belcher, 348 F. Supp. 61,108 (N.D.Ala. 1968) (citing Western Grain Co. Cases,264 Ala. 145, 161, 85 So.2d 395, 411 (1955).) However, the rule is clear that a director cannot act in his official capacity to make contracts for the corporation that will affect his personal pecuniary interest. See Ingalls Iron Works Co. v.Ingalls Foundation, 266 Ala. 656, 665, 98 So.2d 30, 38 (1957); and Holloway v. Osteograf Co., 240 Ala. 507, 515, 200 So. 197,203 (1941). If the interested director's vote is necessary to such a transaction, the transaction will be set aside at the instance of the stockholders. See Holloway, 240 Ala. at 515,200 So. at 203; Holcomb, 216 Ala. at 491, 113 So. at 520; see also Code 1975, § 10-2A-63. A director must manage the corporation honestly and impartially and may not achieve personal advantage, profit, or gain from his position. SeeJefferson County Truck Growers Ass'n v. Tanner, 341 So.2d 485,487 (Ala. 1977).
Furthermore, with respect to transactions between corporations with common directors, we recognize:
 " 'The relation of directors to corporations is of such a fiduciary nature that transactions between boards having common members are regarded as jealously *Page 402 
by the law as are personal dealings between a director and his corporation; and where the fairness of such transactions is challenged, the burden is upon those who would maintain them to show their entire fairness; and where a sale is involved, the full adequacy of the consideration. Especially is this true where a common director is dominating in influence or in character. This court has been consistently emphatic in the application of this rule, which, it has declared, is founded in soundest morality, and we now add, in the soundest business policy.' "
Belcher, 348 F. Supp. at 107 (quoting Geddes v. Anaconda CopperMining Co., 254 U.S. 590, 41 S.Ct. 209, 65 L.Ed. 425 (1921) (emphasis added). Further, in regard to sales by an officer to a corporation, the Belcher court stated:
 " 'The burden is upon the officer to show that no advantage was taken of his position, and that the transaction was in good faith. It may easily occur that such an officer may sell property to the corporation at a price in excess of its value; but it is essential to the validity of the sale that he, and those representing the corporation, thought it within the value, or thought that some benefit would accrue to the corporation by the purchase. The good faith in the transaction will preserve it. But there must be no imposition upon the corporation; there must be no taking advantage of the position; there must be no exercise of an improper influence upon the persons charged with the management of the affairs of the corporation.'
 "Alabama follows this rule as to the burden of proof. Western Grain Company Cases, 264 Ala. 145, 85 So.2d 395 [(1955)]."
Id. (quoting Drennen v. Southern States Fire Ins. Co., 252 F. 776, 790 (5th Cir. 1918) (emphasis added).
Addressing the defendant's role as trustee, we note that the rule is equally well settled that a trustee is under a duty to the beneficiary to "exercise such care and skill as a man of ordinary prudence would exercise in dealing with his own property." First Alabama Bank of Huntsville, N.A. v. Spragins,515 So.2d 962, 964 (Ala. 1987). This standard of care is commonly referred to as the "prudent investor rule" and is generally recognized to be considerably more stringent than the good business judgment rule applied to directors. Unlike the good business judgment rule, there is no presumption of good faith with the dealings of a trustee; consequently, a showing of fraud is unnecessary to impose liability, because a trustee is liable for losses occasioned by his mere imprudent management of the trust. See id.; and First Alabama Bank ofMontgomery, N.A. v. Martin, 425 So.2d 415, 426-27 (Ala. 1982),cert. denied, 461 U.S. 938, 103 S.Ct. 2109, 77 L.Ed.2d 313
(1983).
With regard to a trustee's duty of loyalty, we have recognized the following rule:
 " 'The first and all inclusive requirement of the law is that a trustee shall act with complete and undivided loyalty to his trust.' "
First Alabama Bank of Montgomery, N.A., 425 So.2d at 426
(quoting Birmingham Trust National Bank v. Henley,371 So.2d 883, 895 (Ala. 1979), cert. denied sub nom. Harrison v.Birmingham Trust National Bank, 445 U.S. 915, 100 S.Ct. 1273,63 L.Ed.2d 598 (1980). In Henley v. Birmingham Trust NationalBank, 295 Ala. 38, 47, 322 So.2d 688, 695 (1975), this Court stated:
 "[W]hen referring to the duties of a trustee, 'all personal or selfish interests and all consideration of the interests of third parties must be excluded. His must be an undivided loyalty.' "
Id., 295 Ala. at 47, 322 So.2d at 695 (quoting Barker v. FirstNational Bank of Birmingham, 20 F. Supp. 185, 187 (N.D.Ala. 1937). Further, in Strawn v. Caffee, 235 Ala. 218, 222,178 So. 430, 433 (1938), this Court explained:
 "Sound reasons support the doctrine that the conscience of the trustee is charged with an active obligation to effectuate the ends of the trust he has accepted. Good faith demands no less. *Page 403 
Actual fraud in management, or in the use of the estate, is not necessary."
Finally, when faced with a situation such as that presented in this case, in which the fiduciary has overlapping obligations as both a director and a trustee sharing a common interest, the law imposes a special duty on the fiduciary to deal fairly with both sides. See Belcher, 348 F. Supp. at 107. Having considered the law with respect to the fiduciary obligations of a director and a trustee, we now consider whether the defendant's actions in this case impose liability upon him in either capacity.
The record reveals that at all times relevant to this lawsuit, the defendant has served as a director of American Flexo. Also during this time the defendant has owned and controlled Farley Candy Company, Inc. (hereinafter "Farley"), a substantial customer of American Flexo.
Prior to 1978, the defendant also wholly owned and controlled American Flexo. Then, in 1978, the defendant sold a 50 percent interest in the corporation to Sather Cookie Co., Inc. (hereinafter "Sather"), also a substantial customer of American Flexo, and in 1982, the defendant created the trust involved in the present action, comprised of his remaining 50 percent stock interest in the corporation, with the plaintiff designated as beneficiary.
From a review of the record in this case, it appears to us that even if Ellis is not found to be blatantly in violation of his duties of care and loyalty as a director of the corporation, his duties as a trustee were most certainly breached. The trial court did not address the issue of Ellis's duties as a trustee, even though it found there was a valid trust. The duties of a trustee carry a much stricter standard than do those of a corporate director. Ellis, as a trustee, is to be guided by the "prudent investor rule."
A trustee is under a duty to the beneficiary to "exercise such care and skill as a man of ordinary prudence would exercise in dealing with his own property." First Alabama Bankof Huntsville, N.A. v. Spragins, 515 So.2d 962, 964 (Ala. 1987). Ms. Jones did not need to prove fraud to show a violation of the prudent investor rule, only that the losses were occasioned by Ellis's mere imprudent management of the trust. Id.; First Alabama Bank of Montgomery, N.A. v. Martin,425 So.2d 415, 426-27 (Ala. 1982), cert. denied, 461 U.S. 938,103 S.Ct. 2109, 77 L.Ed.2d 313 (1983). Further, Ellis, as trustee, should have acted with complete and undivided loyalty to his trust, excluding all personal or selfish interests as well as those of third parties. Id.
The record reveals that even if actual fraud or self-dealing was not committed by Ellis, his participation as a director in not attempting to act affirmatively upon a review of the financial records shows imprudent management of the corporation, and imprudent management of the trust corpus. Ellis was adequately informed of the problems of the corporation through the general knowledge of the company operations and in particular from a decision-making meeting regarding the efficiency of the corporation and the sales priority determination for the related corporations.
Contrary to his assertions, the record is not totally devoid of any testimony that Ellis committed any acts of fraud, self-dealing, or negligence. As a director, Ellis is required to act in the utmost good faith and to give his corporation the best care and judgment in the interest of the corporation.Holcomb v. Forsyth, 216 Ala. 486, 113 So. 516, 519-20 (1927). As to third persons, Ellis is considered the corporation's agent. However, as to the corporation itself, equity holds him liable as a trustee. Id.
The record indicates that a loan from Farley Candy Company (owned solely by Ellis) was made to American Flexo; that loan constitutes self-dealing. The record does reveal, that while the idea for the loan originated with an employee of Farley, Ellis was informed of the idea. However, no evidence was found to show that Ellis refused to vote on this loan from Farley to Flexo. In fact, the minutes of the meetings for this time period are missing. The person responsible for the typing of these *Page 404 
minutes testified that he simply failed to take them down. Even so, some testimony could have been given by Ellis or other officers to emphatically and affirmatively show that he abstained from being involved in such decisions.
Ellis asserts that if he actually intended for the corporation to go bankrupt, he could have allowed Flexo's creditors to foreclose for nonpayment. Nonetheless, it still constitutes an instance of self-dealing for Ellis's corporation (with Ellis holding 100% ownership) to lend $100,000 to another corporation (with Ellis holding a 50% ownership) at 12% interest. Ellis cannot act in his official capacity to make contracts for the corporation that will affect his personal pecuniary interest. See Ingalls Iron Works Co. v. IngallsFoundation, 266 Ala. 656, 665, 98 So.2d 30, 38 (1957); Hollowayv. Osteograf Co., 240 Ala. 507, 515, 200 So. 197, 203 (1941). Ellis's corporation will collect interest which will benefit him personally in that he owns 100% of the stock in the corporation making the loan. Ellis may not achieve personal advantage, profit, or gain from his position at American Flexo.See Jefferson County Truck Growers Ass'n v. Tanner,341 So.2d 485, 487 (Ala. 1977).
Ellis lists six areas that contributed to the downfall of Flexo. Ellis asserts that the president and general manager, McGary, resigned from the company and left it without a suitable replacement; and that the replacement hired could not run the corporation efficiently. An additional review of the record shows that well over a year passed without the directors of Flexo making a strong attempt to find a suitable replacement. There is no testimony showing that Ellis initiated activity to either help the new general manager or to find another suitable general manager, even though he was half-owner of the company. There is no testimony from the record disputing Ellis's involvement in the decision-making conference. Even though Ellis may not have run the business on a day-to-day basis, his half-ownership in the corporation and the review of its financial records should have put him on notice, in over a year's time, that the corporation was in trouble. His duties as a trustee make him accountable in this respect, whether or not his inactions constitute fraud or self-dealing.
Ellis also asserts that much of the business enjoyed by Flexo dropped off when McGary left the company and opened his own business. From the record, it appears that this fact is most certainly true. However, during the several months preceding McGary's leaving, those decision-making persons at American Flexo, including Ellis, had already decided that the outside accounts taken by McGary were to be eliminated as customers. The elimination of outside customers should not have caused a loss in profits if the related corporations were ordering sufficient products from American Flexo. American Flexo was originally created to supply Farley and Sather. A return to this original use of American Flexo should not have caused such a drastic downturn.
Ellis further indicates that the corporation experienced a significant loss due to an extraordinary medical insurance coverage expense in 1985 as well as an increase in the costs of labor, repairs, and maintenance. The record does reveal that there was a $57,000 increase in insurance costs and a $100,000 cost in labor. Finally, Ellis contends that competition and the lack of state-of-the-art equipment contributed to the corporation's losses. Ellis insists that the record is completely devoid of any evidence that he contributed directly or indirectly to the above factors. The record does reveal that Flexo was operating with non-state of the art equipment and simply could not compete. However, the record also shows that this same equipment had been used earlier to produce the product at a profit.
Thus, giving Ellis the benefit of the doubt as to whether he committed self-dealing or fraud as a corporate director, we conclude that he most certainly violated his duties as a trustee. The trial court's judgment is due to be reversed on this point. *Page 405 
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED.
87-1311 REVERSED; JUDGMENT RENDERED AS TO ISSUE OF LIABILITY; CAUSE REMANDED AS TO ISSUE OF DAMAGES.
87-1358 AFFIRMED.
JONES, SHORES, HOUSTON and KENNEDY, JJ., concur.